CHARLES P. TALBOT & another *vs.* OLIVER M. WHIPPLE.

A wooden building fastened to the ground by numerous iron bolts passing through the lower timbers thereof into rocks in the ground, one or more of which are natural rocks, and constructed so slightly that it cannot be removed without a large expense in strengthening it, and having a brick chimney and furnace therein, the foundation of which is set in the ground, and also a machine of iron and steel of the weight of six tons, placed on a stone and mortar foundation in the cellar of a building, and extending up into the second story thereof, with the first floor fitted close around the bottom of its frame, and braced and bolted to various parts of the building, and so constructed that it cannot be removed from the building without being taken to pieces and taking up the floor and cutting into the walls and sides of the building, are both fixtures; and, if put there by a tenant, and not removed before the expiration of his term, will pass to the owner of the real estate.

TORT for the conversion of a wooden building and a machine called a callender, with fixtures appertaining thereto. The following facts were agreed in the superior court:

Carroll & Thompson, formerly partners in business, were, while they were such partners, tenants at will of the defendant of certain land and buildings, and of certain water-power connected therewith, owned by the defendant. They carried on the business of dyeing and bleaching cotton and woollen fabrics in and upon the said premises, and erected thereupon a wooden building, used by them for a dry-house, seventy-five feet in length, thirty feet wide, and about thirty-five feet in height, boarded and clapboarded on the outer sides and ends, the roof boarded and shingled, and the inner sides and ends thereof lathed and plastered; a brick chimney and furnace were in the building, having their foundation set in the ground; the furnace was used for generating heat for drying purposes; the

building had no cellar under it, and it was fastened to the ground by means of twenty-six iron bolts, passing through the lower timbers or sills of the building, into as many stones or rocks in the ground, one or more of which were natural or ancient rocks, and on which the sills of the building rested, a few inches above the top of the ground. The building was so slightly constructed that it could not have been removed from the defendant's premises without a large expense in strengthening it.

The callender, so called, was a large machine of iron and steel, of the weight of about six tons, formerly owned by Carroll & Thompson, and used by them in their business, and was placed and set up by them in one of the buildings owned by the defendant, of which they were tenants at will as aforesaid, on a stone and mortar foundation erected by them, about eight feet long and six feet wide, built up to the height of about eight feet from the bottom of the cellar, under the building, and to within about six inches of the top of the first floor of said building; an opening or hole through the floor boards and floor timbers in the first floor was cut, about eight feet in length and about six feet wide; over the top of this foundation, two sticks of timber or thick plank were laid and imbedded in the masonry thereof, and the bottom of the frame of the machine was let into this opening in the floor, and rested on the timbers imbedded in the top of the foundation, and the floor was fitted close around the bottom of the frame of the machine; a hole through the boards and some of the timbers in the second floor of the building was also cut to set up the machine, the top of which extended into the second story; the machine was braced and bolted to various parts of the building, to render it stiff and firm in its position, so that it could be operated; some of the bolts passed through the girt timbers of the building, and entirely through one side of the building, and incisions were made in some of the outside boards thereof; and the box, supporting one of the shafts of the machine, was set in one of the partition walls. When the machine was removed from the building which was about three years since, by a person to whom the

defendant had previously conveyed the premises, it was necessary, to effect such removal, to take the machine to pieces, and to take up the boards of the lower floor, and to cut into the partition wall of the building, in which the box was set as aforesaid, for the purpose of removing the same; it was also necessary, in disengaging the bolts from the building, to take off some of the outside boards and to cut some of the timbers.

In May 1857, after the callender had been set up in the building, and after the dry-house building had been put upon the land on which it was erected as aforesaid, Carroll & Thompson mortgaged to the plaintiffs the callender and dry-house building to secure a promissory note given by them to the plaintiffs for $1200, which mortgage was duly recorded. The plaintiffs never foreclosed this mortgage, and never took possession of the mortgaged property.

Soon after making said mortgage, the partnership between Carroll & Thompson was dissolved, and Carroll purchased Thompson's interest in the business and property of the firm, and thereafter carried on the business in his own name, and on his own account. On January 2d 1860, Carroll was owing the defendant a large sum for the rent of the premises, and after a delay of two or three days granted by the defendant, on the 4th or 5th of the same month, Carroll, without saying anything to the defendant, and without paying his rent, stopped his work and business, and left and abandoned the premises with the intention of never returning to them; and he never did return to them. At the time Carroll so abandoned the premises, he locked all the doors except the back door in the main building, and left the keys of said doors hanging up in said building by the side of the main front entrance; and left all the machinery and fixtures used by him in his business on the premises, among which was the callender and said dry-house building; but he took with him his books of account and papers. As soon as the defendant ascertained that Carroll had abandoned the premises, which was about the 6th or 7th of January, he took possession of the premises, entering the main building through the door, which Carroll had left unlocked, and retained possession thereof until he sold the same, about three years thereafter.

No written notice was ever given by the defendant to Carroll to quit the premises for the non-payment of the rent, or because he desired to terminate the tenancy of Carroll therein; and no written notice was ever given by Carroll to the defendant that he had left, or intended to leave the premises; but Carroll never claimed the possession or occupancy of said premises, nor any part of them, after he abandoned them.

On the 2d of March 1860, Carroll commenced proceedings in insolvency, and in the same month an assignee of his estate was chosen, to whom an assignment of his estate was duly made. But the assignee never had possession, nor claimed the possession or occupancy of the premises, or any part of them.

The rent due from Carroll to the defendant has never been paid. About the 1st of April 1860, the plaintiffs demanded of the defendant the dry-house building and callender aforesaid, and he refused to deliver them.

Upon these facts judgment was rendered in the superior court for the defendant; and the plaintiffs appealed to this court.

*D. S. Richardson*, for the plaintiffs.

*S. A. Brown*, for the defendant.

BIGELOW, C. J. The rule of law, as now settled by the recently adjudicated cases, is, that any acts which are equivalent to an agreement on the part of a tenant to abandon and on the part of the landlord to resume possession of demised premises amount to a surrender of a term by operation of law. *Grimman* v. *Legge*, 8 B. & C. 324: *S. C.* 2 Man. & Ry. 436. *Dodd* v. *Acklom*, 6 Man. & Gr. 672; *S. C.* 7 Scott, N. R. 415. *Phené* v. *Popplewell*, 12 C. B. (N. S.) 334, 340. 1 Cruise Dig. tit. ix., *c.* 1, § 13. The facts in the present case are of the most unequivocal character on the part of both landlord and tenant, and leave no room for doubt as to the intent of the parties. The latter left the premises under circumstances which indicated a fixed purpose, not only to cease to occupy and to give up all control over them, but also to permit the landlord to gain access thereto and resume possession thereof. The former entered with a manifest design of accepting the abandonment and

surrender of the term by the latter, and of finally determining the tenancy. The minds of the parties, therefore, concurred in the common intent of relinquishing the relation of landlord and tenant, and they executed this mutual intent by acts which are tantamount to a stipulation to put an end to the lease.

We think it equally clear that the building and the machine called a callender were in their nature fixtures. The building was of large dimensions, so constructed that it could not be removed from the premises without a change in its structure at great cost; it was built on stone foundations, partly natural and partly artificial, to which it was fastened by iron bolts; a brick furnace and chimney, also resting on a base set in the ground, formed part of the structure, and it was erected by the tenants during the term, to be used in connection with other buildings on the premises belonging to the landlord for the same purposes for which the estate was leased to the tenant. It is difficult to see in what manner a building could be more effectually annexed to the realty than the one in controversy. *Sudbury* v. *Jones*, 8 Cush. 184–189. *Bliss* v. *Whitney*, 9 Allen, 114. The case last cited is decisive also as to the nature of the machine called a callender. It was placed on a solid foundation of stone, erected for the purpose of supporting it, in the soil which formed the bottom of the cellar; its removal would have left large holes in the first and second floors of the building belonging to the landlord, which was included in the demise; it was securely fastened to the timbers which composed the frame of the building by iron bolts, and it could not have been taken away without serious damage both to the inner and outer portions of the structure. These facts show that it was a fixture, within the strictest meaning of the word. *Wall* v. *Hinds*, 4 Gray, 256. *Bliss* v. *Whitney, ubi supra*. We cannot doubt, therefore, that the building and machine are to be regarded, not as movable chattels, such as the tenant might have removed within a reasonable time after the expiration of the tenancy, but as belonging to that class of fixtures which, if removable at all, must be removed by the tenant from the realty during the term demised, or, if suffered to remain annexed thereto after the

expiration of the tenancy, belong to the landlord as a part of the freehold.

It is hardly necessary to add that the plaintiffs can claim no better title to the property in controversy than that which was vested in the tenant under whom they claim as mortgagees. When the mortgage was made, the building and machine were fixtures annexed to the realty of the defendant by his tenant, and which the defendant had then the inchoate right to claim as part of the freehold if not seasonably disannexed before the term was ended.                    *Judgment for the defendant.*