[No. 3859.]

## CARSON ET AL. v. ARVANTES ET AL.

1. LANDLORD AND TENANT—SECURITY FOR RENT—SUBTENANT—SURRENDER OF LEASE.

A lessee deposited with his landlord money to guarantee that he would retain the premises and pay the rent for the term, and afterwards assigned the lease, the lessor accepting the assignee as tenant. Before the expiration of the term the subtenant failed and the landlord took possession of the building, sold out the balance of the subtenant's goods, paid himself rent up to the time of closing out the business, and paid a balance to the subtenant, and retained possession of the building. *Held*, that the resumption of possession by the landlord was a cancellation of the lease contract and released both the original and subtenant from further liability for rent on the contract, and the original lessee was entitled to recover back his deposit.

2. APPELLATE PRACTICE—INTEREST.

A slight mistake of only a few cents made by a jury in the computation of interest is not sufficient ground for either reversing or modifying a judgment entered on the verdict, where attention was first called to the mistake in the appellate court and the trial court was given no opportunity to correct it.

*Appeal from the Court of Appeals.*

Mr. JOHN HIPP, for appellants.

Mr. C. C. BROWN and Mr. M. M. MAKEEVER, for appellees.

MR. JUSTICE GABBERT delivered the opinion of the court.

Appellees were lessees from appellants of a part of a store room for the term of three years from May 1, 1892, as evidenced by a written lease to that effect. For the purpose of securing the performance of their contract, appellees gave appellants a mortgage on lands which, by mutual agreement, was subsequently released, and the former deposited with the latter in lieu thereof the sum of $250. In June, 1894, appellees sold their business, which they were conducting in the

leased premises, to one Hallett, who took possession of such premises with the consent of appellants, as evidenced by the following memorandum indorsed on the back of the lease, signed by them : " This is to certify that we hereby accept W. T. Hallett as tenant, instead of Arvantes Bros., on the same conditions." Appellees claim that when this arrangement was effected, the $250 was to be returned to them, but appellants contend that it was to remain in their hands as security for the payment of the rent by Hallett. The latter paid the rent up to the 1st of September following, when about that time he notified appellants that he could no longer do so. John Arvantes, one of the appellees, was then informed by John Carson, one of the appellants, of Hallett's default, and that the deposit would be forfeited to them unless the terms of the lease were complied with or the store was taken back by appellees and the rent paid. There is some dispute as to what was said by these parties at this time, but not in any material particular, the sum and substance of the conversation on the subject being, according to the testimony of Carson, that he told Arvantes that Hallett could not pay and that they would look to him, to which Arvantes replied, to sell Hallett out, and that he then told Arvantes that he would lose the deposit unless he took the store or paid the rent, and that Arvantes answered he would rather lose the $250 than take the store ; while, according to Arvantes' testimony, the conversation was to the effect that when notified that Hallett had not paid the rent, he said to Carson, " Why do you ask me for it ? I don't care whether Hallett pays or not," and that Carson then said he would go back and close Hallett's business.

Thereafter and on the 7th day of September, 1894, appellants took a bill of sale for Hallett's stock in the leased premises, and thereupon took possession thereof, in these premises, under an agreement with Hallett that they would sell out the stock, apply the proceeds to the payment of certain outstanding bills, reimburse themselves for their trouble, and other incidental expenses, and after deducting the rent.

due from Hallett, pay him the balance.   Under this arrange-
ment it appears to have been understood between appellants
and Hallett that the latter would not resume possession of
the leased premises, or, as stated in the language of Mr.
Carson, when interrogated on this subject: "He did not say
he was not coming back, but we knew he was not."   Four
days after the bill of sale was executed, the sale of Hallett's
stock was completed, from the proceeds of which appellants
retained $55.00 for rent, other expenses agreed upon, and
turned over the balance, amounting to $28.15, to Hallett.
According to the rate of rent for the leased premises, the
$55.00 retained by appellants paid it up to and including the
day when Hallett's stock was disposed of.   This was on the
11th day of September.   While Hallett's stock was being
sold under the bill of sale, and possibly between the 11th
and 17th of September, appellees were again notified by
Carson that unless they took the leased premises back, they
would lose the deposit.   It appears that during this period
appellees were given the opportunity to resume possession
under the lease, and pay the rent by the day or week, which
they refused, but that they actually tried to find a tenant
for the premises.   Their efforts in this respect appear to
have been abandoned.   What the cause was which induced
them to do so is not free from dispute, appellees claiming
that appellants informed them that they would take the store
themselves, which appellants strenuously deny; but this is
not material, because appellants claim that finding they were
unable to effect any arrangement with appellees, they were
obliged to take the store and save themselves.   From the
11th to the 17th of September, the leased premises do not
appear to have been actually occupied by any one; but on
the latter date appellants, without the consent of appellees,
and without any further understanding than what might be
inferred from the evidence above stated in substance, tore
down the partition which separated the part of the store
leased from the remainder of the room of which it formed a
part, went into the actual possession thereof, and thenceforth

occupied it. On the 21st of January following, appellees brought suit before a justice of the peace to recover from appellants the amount of their deposit, the amount of their demand, as indorsed on the summons, being $250, without any mention of interest. From a judgment against appellants, they appealed to the county court, where, on the facts substantially as above stated, the cause was submitted to a jury, who returned a verdict in favor of appellees for the amount of the deposit, with interest, amounting in all to $267.22. During the progress of the trial, Arvantes was asked by counsel for appellants if he did not tell Mr. Hallett that Carson & Company could keep the $250, and that he would not take the store back, to which appellees interposed an objection, which was sustained. Notwithstanding this objection, however, Arvantes answered the question in the negative, which was allowed to stand. Hallett also testified on behalf of appellants, to the effect that he talked with John Arvantes, and told him that he was unable to continue, and that he had the privilege of taking the place back, if he saw fit to secure himself from loss in that way, and thus save the amount of his deposit, to which he replied that he would not do that; that he did not want the store. This evidence, on motion of appellees, was stricken out. Hallett was then asked if he conveyed this reply of Arvantes' to appellants, which was objected to, and the objection sustained.

From a judgment on the verdict, the defendants appealed to the court of appeals, where, upon the record substantially as disclosed from the above statement, it was held that the deposit was for the security of whatever damages appellant sustained by reason of the rent not being paid according to the terms of the lease, and that the acts of appellants amounted to a cancellation of the lease, terminated the obligation of the lessees, or their assignee, to pay any further rent, which entitled appellees to a return of the deposit, and affirmed the judgment of the trial court. *Carson v. Arvantes*, 10 Colo. App. 382. From that judgment defendants appeal to this court.

Appellees base their right to recover the deposit upon two grounds: First, that when appellants accepted Hallett as lessee it was to be returned to them; and second, that the lease having been terminated by the acts of appellants, and the rent being paid up to the date when so terminated, they were entitled to its return. The facts regarding their right to a recovery on the first ground, are controverted, but in passing upon the questions presented, we will assume, with appellants, that after their acceptance of Hallett as a tenant, the deposit was still to remain in their hands upon the same conditions as before, and thus all questions regarding the rejection of testimony which appellants insist should have been admitted to establish their issue on this question, are eliminated.

The only question presented is, did the court of appeals determine the cause on correct principles of law applicable to the facts? In determining this question, however, we do not deem it necessary to decide whether the agreement with respect to the deposit was one of liquidated damages, in case of a breach of the contract of lease, or whether it was security for damages which appellants might sustain in case the terms of that agreement were not complied with, for it could make no difference how it should be treated in this respect, if, as a matter of fact, the lease was terminated by the acts of the parties, and the rent paid up to the date when it was so cancelled. In the court of appeals counsel for appellants insisted in his printed brief (as, also, in the brief filed here), that the evidence established, or that which was refused or stricken out tended to establish, that appellees, by their declarations and acts, had estopped themselves from making any claim to this deposit, because thereby they had compelled appellants to make the arrangement with Hallett they did, and took possession of the leased premises. In this court the same proposition is advanced, with the further one that appellants would not complain (quoting from the brief) "had they not been instructed by the appellees to keep the money, and tear down the partitions. It is true, as stated by the court of appeals, that they took possession of the premises, but it was done,

relying upon the statements of the appellees, that appellants should keep the $250, and not otherwise;" and as we understood their counsel in oral argument, he now advances the further proposition, that the evidence received established, and also that which was excluded tended to establish, that a new contract had been entered into between appellants and appellees with regard to this deposit, by which the latter voluntarily agreed that appellants might take the course they did, and still retain it; and as he requested certain instructions submitting the cause to the jury upon this theory, which were refused, a new trial should be granted. Neither position is tenable. We do not understand how, upon any possible ground, counsel for appellants is warranted in insisting that the evidence received or rejected either established or tended to establish, in the remotest degree, that appellees had instructed appellants to tear down the partitions and keep the money, or which warranted them in making the arrangement with Hallett they did, or in taking possession of the premises on the strength of any declarations of appellees, from which it would be inferred that they might do so, and still retain $250. There is not a syllable of evidence upon which to base any such assumption. On the contrary, the testimony of Mr. Carson on the subject of retaining the deposit shows conclusively that appellees never agreed that appellants might keep the money, for he says, in speaking of what transpired between himself and John Arvantes, who appears to have conducted the negotiations on behalf of the appellees, "To the best of my recollection, he never said to take that money and keep it."

Neither does the evidence received or rejected tend in any manner to establish a state of facts which would estop appellees from claiming this money, or create a new agreement between appellants and appellees with respect to it, for the statements of the latter which were received, as well as those refused, were merely declarations upon their part that they elected to stand by their contract regarding the deposit, as well as any obligations, if any, to pay rent for the leased

premises; or, in other words, these declarations by appellees clearly established that they refused to make any agreement different from that which was entered into when appellants accepted Hallett as a tenant, and it was, therefore, necessary for them, if they still desired to retain their right to the subject-matter of the controversy, that they stand by that agreement, and take no steps which would forfeit that right. According to their contention, their right to resort to the deposit depended upon whether Hallett paid his rent, and therefore, if for any reason the latter was released from that obligation, their right to the deposit would cease. So that the vital question is, did the arrangement between appellants and Hallett result in releasing him from further liability under the lease? This arrangement was voluntary; under it appellants took possession of the leased premises; it may be said that this act upon their part was merely for the purpose of disposing of his stock, and was not intended to be continuing. Granting that this may be true, it was not the act which conclusively determined their rights. They knew when Hallett turned over his stock under the agreement mentioned, that he did not intend to return. They did not expect to hold him for rent beyond the period when his stock was disposed of. This is manifested by the fact that they retained the rent up to and including that date, turning over to him the balance realized from the sale, after deducting the items agreed upon. These acts resulted in a cancellation of the lease, by operation of law; for any agreement between landlord and tenant manifesting the intention of both to terminate a lease, which is unequivocally acted upon by each, effects its cancellation, and Hallett being released from all liability under the lease, it follows that the security pledged for the performance of his contract was discharged; and, therefore, appellants could no longer insist upon holding a deposit for the performance of a contract which by their own act they had cancelled. *Buffalo Co. Bank v. Hanson*, 34 Neb. 455; Taylor on Landlord and Tenant, § 507; *Talbot v. Whipple*, 96 Mass. 177. Thereafter they assumed possession of the

leased premises, but not under any new agreement with appellees which would revive their liability under an agreement which appellants had previously annulled.

Further errors relating to the rejection of testimony, the instructions of the court and the refusal of those tendered by appellants are argued, but as this rejected evidence did not in any manner tend to establish any facts on the issue between the parties as to the second ground upon which appellees base their right to a recovery of the deposit different from what we have stated, and the instructions refused sought to submit the case under this issue upon facts which there was no evidence whatever tending to establish, and as under the facts established the trial court would have been justified in peremptorily instructing the jury to return a verdict for the appellees, it is unnecessary to pass upon them.

But one further question needs to be noticed, and that is, the contention of appellants that the jury returned a verdict for more interest than appellees were entitled to recover. The court instructed the jury that appellees were entitled to interest on the amount of the deposit, at the rate of eight per cent per annum, from the date they should find that a demand therefor was made upon appellants. This instruction was excepted to by their counsel, but no reason assigned why it was erroneous. It is claimed that interest should only be computed from the 21st day of January, 1895, for the reason that on that date suit was commenced before a justice of the peace to recover the amount of the deposit, but no claim for interest was made, because none was indorsed on the back of the summons issued by the justice. In the motion for a new trial, filed in the county court, no error appears to have been assigned upon the instruction regarding interest, so that the error in this respect, if any there was, and the exception properly raised the question, has been waived; and, besides, we find from examining the assignment of errors, that none are predicated upon this instruction, and if this question can be considered, it must be upon the ground assigned in the motion for a new trial, that the verdict is ex-

cessive, and so much so, that it appears to have been given under the influence of passion and prejudice, which is one of the errors assigned in the court of appeals and also in this. The only excess in the verdict which can possibly be urged, is the one of interest. The court instructed the jury the date from which it should be computed. In doing so they appear to have made a mistake against the appellants, but, as demonstrated by the court of appeals, this error amounts to but a few cents, and at most is but an immaterial discrepancy, insufficient to work either a reversal or modification of the judgment when raised for the first time on appeal; so that the mistake of the jury in this respect was not due to passion or prejudice, but error of the trial court, if it was such, in directing them from what date interest should be computed. The amount of interest to which appellees were entitled is but a matter of computation and could have been readily corrected had the attention of the trial court been called to it in an appropriate way, either by reducing the verdict the amount of the excess interest which the jury had erroneously allowed, following the instructions of the court, or only allowing interest from the 21st day of January, 1895, whichever was correct; but not having done so, appellants cannot complain of an alleged error which the trial court was given no opportunity to correct. No errors were committed by the trial court which affected the substantial rights of the parties. The views expressed by the court of appeals, so far as we have considered the questions there determined, are in harmony with ours, although we base our conclusion that the judgment of the trial court was correct upon facts, as we read the record, slightly different from those mentioned in the opinion of the court of appeals, and its judgment is, therefore, affirmed.

*Affirmed.*