M. J. CUNNINGHAM, *Appellee,* v. L. D. STOCKON *et al.,* as Executors, etc., Appellants.

No. 16,342.

SYLLABUS BY THE COURT.

LANDLORD AND TENANT — *Rental Advancement* — *Penalty or Liquidated Damages—Default in Rent and Possession Taken by Landlord.* In a lease contract an owner undertook to erect a building and let it to a tenant for five years at a stipulated rental, payable monthly, the tenant to make an advance payment of $4200, to be applied on the fifth year's rent. The advance payment was made, the building erected, and it was occupied for some time by the tenant, who paid the accruing rentals. Before two years of the term had expired default was made in the payment of rent, and because of the nonpayment of rent the landlord took possession of the premises and also of property belonging to the tenant and relet the premises at a reduced rent. The tenant brought an action to recover the deposit advanced, and the landlord claimed that it was part performance of a violated contract and that he was therefore entitled to retain it. *Held,* that the deposit could not, under the circumstances, be regarded as liquidated damages, and that when the landlord elected to dispossess the tenant he terminated the lease and ended the obligation of the tenant under it for the remainder of the term and was not entitled to retain the deposit, except so much of it as was necessary to pay the rentals which had accrued when possession was taken.

Appeal from Wyandotte district court; EDWARD L. FISCHER, judge. Opinion filed February 12, 1910. Affirmed.

### STATEMENT.

THIS action was brought by M. J. Cunningham to recover from the executors of L. D. Stockon, deceased, money advanced by Cunningham on a lease dated July 1, 1905, under which Stockon agreed to erect a theater of a size and quality described and let it to Cunningham for a term of five years, beginning at the completion of the building. Stockon was to keep the roof and outer walls in repair, but was not required to renew or repair any other part of the building. The lease contained this provision:

"The said parties of the second part, in consideration of the leasing of said premises as above set forth, covenant and agree with the party of the first part, his heirs or assigns, as rent for said premises to pay the sum of $21,000, $4200 of which is to be paid on July 1, 1905, which shall be applied upon the discharge of the last, or fifth, year's rent, and the balance shall be paid in equal monthly payments of $350 each, payable monthly in advance, the first monthly payment to be made when the building is ready for the second party to take possession of and occupy according to this lease."

Cunningham was to keep the interior of the building, as well as the fixtures and furniture, in good repair during the term of the lease, and give possession of the building at the end of the term. A provision for the right to renew the lease for another term was included, and there was a provision that if the building was destroyed by fire the lease should be terminated and a settlement for rent should be made on the basis of the time the theater had been occupied. In his petition Cunningham alleged that at the execution of the lease he paid Stockon $4200, and that when the building was completed he went into possession and paid rent thereon from month to month at the stipulated rate of $350 per month, with the exception of one

month, which was credited to him for damages to his
property by water. He alleged that Stockon died in
March, 1907, and that on July 1, 1907, the duly ap-
pointed executors unlawfully dispossessed him, and
upon his demand refused to pay any part of the $4200
of the cash deposit which he had made when the lease
was executed. He also averred that about August,
1907, the executors had leased the building to another
for a term of five years, thus repudiating the lease to
him. It was further alleged that when they dispos-
sessed him they took and converted to their own use
carpets, scenery, furniture and fixtures which belonged
to him of the value of $200. He therefore asked judg-
ment for $4400, the amount of the deposit and the value
of his property which had been converted. The ex-
ecutors filed the following answer:

"(1) Come now the defendants and in answer to the
plaintiff's amended petition deny each and every alle-
gation in said amended petition contained, except such
allegations as are hereinafter admitted.

"(2) The defendants admit that L. D. Stockon en-
tered into the written agreement set out in plaintiff's
petition, and allege that the plaintiff likewise entered
into said agreement. A copy of said agreement is at-
tached to this answer and made a part hereof.

"(3) The defendants allege that L. D. Stockon, in
his lifetime, and these defendants, after his death, duly
performed all the conditions of said contract which
said L. D. Stockon promised and agreed to perform.

"(4) The defendants admit that plaintiff caused
said contract to be recorded in the office of the register
of deeds of Wyandotte county, Kansas, as alleged in
plaintiff's petition.

"(5) The defendants allege that the said L. D.
Stockon, who entered into the written contract afore-
said, died in the month of October, 1906, and that the
defendants Samuel M. Stockon and Irene Williams are
the duly appointed, qualified and acting executors of
his estate, and the other defendants are the devisees

under said L. D. Stockon's will of the real property described in plaintiff's petition and amended petition.

"(6) The defendants deny that the plaintiff performed all the covenants and agreements which the plaintiff by said written agreement promised and agreed to perform.

"The defendants admit that the plaintiff paid the $4200 mentioned in said contract, for the purpose therein mentioned, and paid all rents that became due and payable on and before the month of January, 1907, but the defendants allege that the plaintiff paid no rent for the month of February, 1907, nor for any month thereafter.

"(7) Because of the plaintiff's default, by the non-payment of the rents which accrued and became due for the months of February, March, April, May and June, 1907, amounting in the aggregate to seventeen hundred and fifty dollars ($1750), and for no other reason, the defendants, after due and repeated notice to the plaintiff, took possession of said real property described in plaintiff's amended petition, on or about the first day of July, 1907.

"(8) That by reason of the breach of said written agreement by default in the payment of the rent aforesaid the plaintiff is unable to maintain this action.

"(9) At and after the taking possession of said premises, about July 1, 1907, the defendants sought diligently for a tenant to lease and occupy said premises, and were unable to find one, and unable to derive any rent or revenue from said premises until the month of October, 1907, at which time the defendants rented said premises for the sum of two hundred and twenty-five dollars per month, which was the highest rent defendants have been able to obtain. Since said first day of October, 1907, said premises have been occupied and rent paid at the rate of $225 per month, and defendants allege that $225 per month is as high a rent as the defendants can reasonably expect to obtain for the remainder of the term for which plaintiff rented said premises.

"(10) In consequence of the breach of the plaintiff of the written contract set up in plaintiff's petition, the

defendants have been damaged in the sum of nineteen hundred and seventy-five dollars, itemized as follows:

| | |
|---|---:|
| Rent for eight months from February 1 to October 1, 1907 | $2,800 |
| Diminished rent of $125 per month from October 1, 1907, to December 31, 1907 | 375 |
| Diminished rent for the calendar year 1908 | 1,500 |
| Diminished rent for the calendar year 1909 | 1,500 |
| Total loss of rent | $6,175 |
| Less $4200 paid for year 1909 | 4,200 |
| Total damage suffered by defendants | $1,975 |

"In answer to the second count of plaintiff's petition, the defendants admit that in taking possession of the theater they found personal property in the theater which plaintiff now claims, and for which the defendants are willing to allow plaintiff the $200 alleged by plaintiff to be the value of said property, to be credited upon damages aforesaid.

"Therefore, defendants pray that the lease, or written agreement, set up in plaintiff's petition be declared rescinded by the breach of the plaintiff, and the plaintiff be ordered to discharge said lease of record in the office of the register of deeds of Wyandotte county, Kansas.

"The defendants further pray a personal judgment against the plaintiff for the sum of seventeen hundred and seventy-five dollars and costs of this action."

The reply was a general denial, and the trial court, on the pleadings, gave judgment in favor of Cunningham, awarding him $2650 and the interest thereon from July 1, 1907. The executors appeal.

*O. L. Miller, W. J. Buchan,* and *C. A. Miller,* for the appellants; *Samuel Maher,* of counsel.

*John H. Atwood,* and *William W. Hooper,* for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: Stockon undertook to erect and furnish a theater which would seat 750 persons, and Cunningham agreed to rent the building for five years

from completion at a monthly rental of $350, and evidently, as an assurance that he would keep the covenants of the lease, he agreed to, and did, pay Stockon $4200, which it was stipulated should be applied on the rent of the fifth year of the term. The $4200 was paid before the erection of the building was commenced, and, of course, many months before the possession of it could be given to Cunningham. After obtaining possession and operating the theater for some time Cunningham defaulted in the payment of rent, and because of the nonpayment of rent, and for no other reason, the appellants took possession of the building, as well as some of Cunningham's property which was in it. According to the averments of the answer appellants took possession of the theater July 1, 1907. At that time Cunningham was in arrears for five months' rent, which amounted to $1750. It is admitted that $4200 was advanced by Cunningham when the lease was executed, and, deducting the amount due for rent from the deposit, there remains $2450, and when to this is added $200, the value of appellee's property which it is admitted that appellants appropriated to their own use, we have the amount of the judgment awarded by the trial court. Appellants contend that the $4200 was advanced by the tenant in part performance of an entire contract, and as the landlord was ready and willing to perform his part the tenant, who was in default, could not recover back what he had advanced. It is insisted that a lease should be measured by the rules applicable to a contract for the sale of land, under which it is held that money advanced in part performance of the contract can not be recovered back by a defaulting vendee. The relations of vendor and vendee in the transfer of land differ substantially from those existing between landlord and tenant, and the equitable considerations which arise between the two sets of parties are not the same. In

volume 2 of the third edition of McAdam on Landlord and Tenant, at page 964, it is said:

"If a vendee pays money on a contract of purchase, he can not if in default recover it back. But in the case of a deposit of money by a tenant the courts hold that he may, though in default, recover the deposit back if he satisfies the damages up to the time of dispossession. This may seem anomalous, but it is because the equitable principle of avoiding forfeiture has been applied to the one case, but not to the other."

Courts generally hold that such deposits should be treated as penalties, and they have been so held even in cases where there was a provision in the lease itself that the deposit might be forfeited as liquidated damages. In *Carson v. Arvantes*, 50 Pac. (Colo.) 1080, the "plaintiffs leased from defendants a building at an advanced rental of $250 per month, giving a mortgage on lands worth $7200 to secure the punctual performance of their agreement. Subsequently the mortgage was released, and the lessees deposited with the lessors $250, with the provision that in the event of nonpayment of rent the deposit should be forfeited," and it was held that the deposit should be treated as security only and not as liquidated damages. There the subtenant failed to pay the rent when due and subsequently surrendered possession to the landlord. The court, after showing that the abandonment and surrender of the possession terminated the lease, said:

"Under this rule the landlord, of course, has his election between one of two remedies: He may leave the premises vacant, sue for the rent for the balance of the term, and enforce any security which the lessee gave to insure performance. If he chooses, he may likewise terminate the contract, and enter a claim for rent up to the date of the abandonment and the acceptance of possession. He is not at liberty to take possession of the premises, and at the same time insist that the contract is in force, and recover rent for the balance of the term." (10 Colo. App. 382, 387.)

The lease did not contain an express statement that

the money advanced should constitute a deposit to in-
sure performance by appellee, but the advancement of
so large an amount, the payment of the same before
the construction of the building was begun and about
six months before possession could be obtained and the
provision that the amount advanced should be applied
on the rental for the last year of the term clearly indi-
cate that it was a deposit to insure performance by ap-
pellee.   Now the lease did not provide that a failure to
pay rent when due should forfeit the cash deposit nor
that it should be forfeited for any reason.   Under the
statute, if a tenant neglects to pay rent for a certain
period the landlord may terminate the lease by giving a
certain number of days' notice in writing, unless the
rent is paid before the term expires.   (Gen. Stat. 1901,
§ 3851.)   Cunningham being in default as to rent, ap-
pellants had the right to terminate the lease, but there
is nothing in the agreement or the statute which would
warrant us in treating the $4200 deposit as liquidated
damages or justify the forfeiture of the same for non-
payment of rent.   According to the theory of appellants
the default of a tenant in the payment of rent for a
week, or even a day, would warrant them in taking pos-
session of the property and appropriating to them-
selves the $4200 of indemnity which the tenant ad-
vanced.   It would seem that if the parties had intended
that such a deposit should be forfeited because the
tenant was in arrears for rent it would have been stipu-
lated in the lease.   There is no contract or statutory
provision, nor any equitable consideration, which would
justify the forfeiture of so large an amount for such a
default.   It is argued that the deposit was only a pay-
ment of the last year's rent and a part performance of
the contract, but it can not be so treated, as the appel-
lants, by dispossessing the appellee and terminating
the lease before the fifth year arrived, have made it im-
possible to apply it on that year.   When appellants
took possession of the building and appropriated ap-

pellee's property in it to their own use they effectually
terminated the lease and ended the obligation of ap-
pellee under it for the remainder of the term.    It, of
course, did not release appellee from any obligation for
rent, waste or other loss which had accrued when the
lease was terminated, but all claims which had then
matured were allowed by the court and deducted from
the amount of the deposit.    When appellee became in
arrears for rent appellants had the option to continue
the relation and deduct so much of the deposit from
month to month as would satisfy the maturing rent, or
to end all leasehold rights, as they did do, by a reëntry
of the premises.    Or if appellants could have obtained
possession from appellee through surrender or aban-
donment, and had relet the premises as the agent of
appellee, they perhaps might have held him for the de-
ficiency in the rent and applied the deposit to that pur-
pose.    Here, however, they exercised the option to ter-
minate the lease and all obligations of the appellee
thereafter under it.    In speaking of the right to retain
such a deposit where a landlord had terminated a lease
by a reëntry the New York court of appeals said:

"When he accomplished it and took possession of the
premises the damages with which the plaintiff was
chargeable were those only which resulted from breach
of the covenants prior to entry of the defendant, upon
the termination by the latter of such tenancy, as there
could, in the nature of the case, be no breach of them
committed by the plaintiff after the effectual termina-
tion of such relation and reëntry by the defendant."
(*Chaude v. Shepard,* 122 N. Y. 397, 401.)

In volume 1 of Underhill on Landlord and Tenant, at
page 583, in speaking of a deposit out of proportion to
the amount of rent due and where the tenant is dis-
possessed for neglect to pay rent, it is said:

"The presumption in such cases is that the lessor re-
sumed the possession of the premises and has relet
them, and if he has done this it is difficult to see any
fairness in the proposition that he can receive the rent

after his lessee has vacated the premises and at the same time retain a large sum of money as damages, which sum may be three or four times the actual damages. At the most the deposit will be regarded as security only, and if the lessor elects not to accept a surrender he may exhaust the deposit by applying it to arrears of rent as it falls due. This, however, is the most favorable construction that the court will put upon the matter, and on the other hand, if the lessor assumes possession and the loss of rent is readily ascertainable, and particularly if the loss be small, will treat the deposit as a penalty only and will consider that the lessor has waived any claim he might have to it, either as liquidated damages or as security for the rent, by his action in reëntering upon the premises."

In *Caesar v. Rubinson,* 174 N. Y. 492, a lease provided for an advance payment to secure performance of its conditions by the tenant, and also that the deposit might be retained by the landlord as liquidated damages in case there was a breach of the lease, and it was held that the fact that the deposit was designated as liquidated damages did not warrant the retention of the sum for the failure of the tenant to pay $45 of rent. It was also decided that, $1000 having been deposited by defendant to secure the performance of a lease, and the landlord having asserted his right to reënter for failure of the tenant to pay a monthly rent of $45, the landlord thereby waived the claim to the deposit except so far as it was necessary to apply it in payment of rent then due or accrued. (See, also, *Scott v. Montells,* 109 N. Y. 1; *Michaels v. Fishel,* 169 N. Y. 381; *Sutton v. Goodman,* 194 Mass. 389, *Hecklau v. Hauser,* 71 N. J. L. 478; *Carson v. Arvantes,* 27 Colo. 77; 2 McAdam, Land. & Ten., 3d ed., p. 963.)

There is no occasion to consider here the effect of a covenant in a lease requiring a tenant to make good a deficiency arising upon a reëntry and reletting of the premises because of the default of the tenant, as the lease in question contained no such provision. Besides, there is no claim that appellants took possession as

agent of appellee or that the reletting was upon his account.

Upon the admitted facts the case was well decided by the trial court, and its judgment is affirmed.