[No. 3721.]

## WILSON ET AL. v. AGNEW.

1. LANDLORD AND TENANT—*Tenant's Surrender—Effect.* Tenant's surrender of leased premises, accepted by the landlord, extinguishes the relation of landlord and tenant, and discharges the tenant from all liability for rents subsequently accruing. Where there is no express agreement of the parties, the question whether a surrender has been effected depends on their intentions.

2. —— *Rights of Landlord.* The landlord, on the tenant's abandonment of the premises or violation of the terms of the lease, is not re-

quired to re-let for the protection of the tenant. He may suffer the premises to remain vacant and recover the rent for the residue of the term.

But he may, at his election, enter and determine the lease, and at the same time recover the balance of rentals then due. He is not entitled to demand rents subsequently accruing.

3. —— *Rights of Tenant—Security for Rent.* Where the tenant makes a deposit to secure his performance of the covenants of the lease and is dispossessed during the term for a default in the payment of rent, the deposit is not forfeited. The tenant recovers the balance, after deducting the damages suffered by the landlord by reason of the tenant's defaults, prior to dispossession.

4. —— *Manner of Tenant's Dispossession Is Immaterial.* The result is the same whether the landlord accepts the tenant's voluntary surrender, or expels him.

5. CONTRACTS—*Penalty or Liquidated Damages.* Appellee's assignor rented premises of the defendant for a term of years. The lessee gave a bond of $3,000.00, with surety, to guarantee performance of the lease. Five thousand dollars, evidenced by a promissory note secured by a deed of trust, was deposited with the lessor, to be considered as a loan for the period of the lease, but provision was made that if the lease should be forfeited the note and deed of trust should be canceled. At the end of six months the assignee abandoned the premises and the landlord entered, taking entire control. *Held,* following *Carson v. Arventes,* 27 Colo., 81, it was not necessary to determine whether the deposit made by the lessee constituted liquidated damages or a penalty.

6. EVIDENCE—*Parol Not Admissible.* Parol evidence is not admissible to enlarge the liability of the lessee for damages not mentioned in the lease.

*Appeal from Denver District Court.* HON. GEORGE W. ALLEN, Judge.

Mr. MEL EMERSON PETERS, Mr. HALSTED L. RITTER, Mr. HAMLET J. BARRY and Mr. JOHN T. BARNETT for appellants.

Mr. E. I. THAYER for appellee.

MORGAN, J.

Defendants appeal from a judgment against them in an action begun March 23, 1910, by the plaintiff, Agnew,

assignee of the Psychic Science Company, a corporation that leased from the defendant, Wilson, a certain piece of real property in Denver, Colorado, for a period of ten years. The suit was brought by the assignee of the lease to recover the amount of a deposit of five thousand dollars and to cancel a bond for three thousand dollars made by the lessee to the lessor.

The entire transaction was reduced to writing, and consisted of a lease for ten years, Wilson, lessor, and the Psychic Science Company, lessee; a bond for $3,000 given to the lessor by the lessee as principal and the Empire State Surety Company as surety, to guarantee the keeping of the obligations in the lease; a written agreement was also entered into between the lessor and lessee whereby $5,000 was turned over to the lessor, to be considered, so long as the lessee kept the obligations of the lease, as a loan for ten years at six per cent, evidenced by a note and deed of trust on the leased property, but with the further provision that if the lessee should fail to keep the obligations of the lease, or any of them, or forfeit the lease, then the said note and deed of trust to be canceled and released; a written option was also given by the lessor to the lessee to purchase the property within one year.

The Rome Realty & Investment Company and F. L. Peters were made defendants because the property was conveyed to the investment company by Wilson after the lease, and prior to the suit, and Peters was the agent of the defendant, Wilson. The Empire State Surety Company was made a defendant because the plaintiff had conveyed to it certain property to indemnify it against loss on account of its suretyship on the bond, and the complaint prayed for a reconveyance of this property to her.

The complaint demands that Wilson pay the $5,000 left with him as a deposit, and that the $3,000 bond given to him be canceled. The defense is that the $5,000 deposit

and the $3,000 bond were made and agreed upon between the lessor and the lessee as liquidated damages, and that the defendant is entitled to retain the $5,000, and entitled to the $3,000 guaranteed by the bond, because the lessee forfeited the lease. The defendants filed a cross-complaint, demanding the $3,000 due upon the bond, and the Empire State Surety Company filed its answer, denying liability.

The lower court gave the plaintiff judgment for the $5,000, except the balance of the rent owing on the last month that the lessee occupied the building; ordered the cancellation of the bond for $3,000, released the surety thereupon, and ordered the surety to reconvey to the plaintiff the real property she had conveyed to it as indemnity; also declared a lien upon the leased property for the amount of the judgment in favor of the plaintiff.

An examination of the various written instruments introduced in evidence and entered into in conjunction with the lease discloses a very careful attempt on the part of the lessor to protect himself against loss in case of a forfeiture of the lease.

First, the lease provides for a re-entry by the lessor in case of a failure to pay the rent.

Second, the agreement whereby the $5,000 was deposited with the lessor as a loan, provided that the note and deed of trust should be canceled and delivered up in case the lease was forfeited.

Third, the bond for $3,000 provided that if the rent was not paid in accordance with the lease, or if any of the obligations of the lease was broken, the amount of the bond should be forfeited to the lessor, and that the amount should be considered as liquidated damages and not as a penalty.

After these instruments were executed, the lessee took possession, paid the rent as agreed for five or six months, and defaulted, by paying only a part of the Feb-

ruary, 1910, rent. The lease was made May 1, 1909, but payment of rent, by agreement, did not begin until the building was finished that the lessor was to erect upon the leased premises. The lessee was notified when this default occurred, in writing, that unless the rent was paid as required by the lease, the property must be vacated, and in which notice the lessor declared a forfeiture of the lease, and stated that he would take possession of the property, unless the rent was paid. The lessor and Mrs. Agnew, as assignee, aforesaid, had some conversation after this notice was given, in which it was tacitly understood between the two that the lessee would surrender the property and the lessor would accept the same. Thereafter, the lessor took entire and complete control of the property; the lessee abandoned it, and the lease, the lessor altered the second story of the building, took over the tenants that were occupying portions of it, collected rents from them himself, made leases with subsequent tenants, and in all other respects took entire control of the property as of his first and former estate, as the lease provided he could do.

Could he do this, and, at the same time, claim the deposit and the benefit of the bond? The answer, on first impression, would be in the affirmative, but the law is plain between landlord and tenant that, when the lessor re-enters and resumes absolute control of the property, on account of a default of the lessee in the payment of the rent, or as to any other obligation of the lease, or by reason of an abandonment or surrender of property by the lessee and acceptance thereof by the lessor, the lease is thereby canceled, and, by reason thereof, both parties are released from any subsequent obligation or liability under the lease.

"The surrender of the leased premises by the tenant extinguishes the relation of landlord and tenant, and releases him from liability for rent accruing thereafter.

\* \* \* Surrender may be had by express agreement of the parties or by operation of law, and in the latter case whether or not a surrender has been effected ordinarily depends upon the intention of the parties."—24 Cyc., 1162.

"A landlord is not, on the abandonment of the demised premises by the tenant in violation of his contract, required to relet for the protection of the latter, but may at his election suffer the premises to remain vacant, and recover his rent for the remainder of the term, or, he may on the other hand elect to enter and determine the contract, and in the event of such re-entry he is entitled to recover only for the rent then due."—24 Cyc., 1164, 1165.

"Where a tenant deposits money as security for the payment of rent and the performance of the covenants of the lease, and is dispossessed during the term for failing to pay rent, the deposit is not forfeited; the tenant is entitled to recover the balance remaining after deducting therefrom the amount of damages suffered by the landlord from the breaches of covenants on his part prior to the dispossession. Even in some cases where the lease recites that the deposit is made as liquidated damages, the tenant has been held to be entitled to the surplus."— 24 Cyc., 1143, 1144.

In the case of *Carson v. Arvantes*, 10 Colo. App., 382, 387, 50 Pac., 1080, the court said:

"An agreement by the tenant to abandon possession of the demised premises and one by the landlord to resume his occupancy and the execution of this agreement in law amount to a surrender of the term. Whenever this happens the lease is terminated and the obligation of the tenant to occupy or to pay rent is thereupon determined. This is familiar law with reference to leasehold rights and is thoroughly well settled.—*Talbot et al. v. Whipple*, 96 Mass. (14 Allen), 177; *Kneeland v. Schmidt*, 78 Wis., 345, 47 N. W., 438, 11 L. R. A., 498; *Hegeman v. McAr-*

*thur,* 1 E. D. Smith (N. Y.), 147; *Rice v. Dudley,* 65 Ala.,
68; *Buffalo County National Bank v. Hanson,* 34 Neb., 455,
51 N. W., 1035.    Under this rule the landlord, of course,
has his election between one of two remedies.    He may
leave the premises vacant, sue for the rent for the bal-
ance of the term and enforce any security which the lessee
gave to insure performance.    If he chooses he may like-
wise terminate the contracts and enter a claim for rent
up to the date of the abandonment and the acceptance of
possession.    He is not at liberty to take possession of the
premises, and at the same time insist that the contract is
in force and recover rent for the balance of the term.''

Our supreme court, in the same case, appealed to it,
27 Colo., 77, 83, 59 Pac., 737, said:

"Any agreement between landlord and tenant mani-
festing the intention of both to terminate a lease, which
is unequivocally acted upon by each, effects its cancella-
tion, and Hallet being released from all liability under
the lease, it follows that the security pledged for the per-
formance of his contract was discharged; and, therefore,
appellants could no longer insist upon holding a deposit
for the performance of a contract which by their own act
they had canceled.—*Buffalo County Bank v. Hansen,* 34
Neb., 455, 51 N. W., 1055; Taylor on Landlord and Ten-
ant, sec. 507; *Talbot v. Whipple,* 96 Mass., 177.''

See also *Rauer's Law & Collection Co. v. Third Street
Improvement Co. et al.* (Cal. App.), 131 Pac., 77; *D'Ap-
puzo v. Albright* (Sup.), 76 N. Y. Supp., 654; *Cunningham
v. Stockon,* 81 Kan., 780, 106 Pac., 1057, 19 Ann. Cas., 212;
*Chaude v. Shepard,* 122 N. Y., 397, 25 N. E., 358; *Baxter
v. Heimann,* 134 Mo. App., 260, 113 S. W., 1152; *Brigham
Young Trust Co. v. Wagener,* 13 Utah, 236, 44 Pac., 1030.

It makes but little difference in what way the lease
was terminated, whether by re-entry and a resumption of
possession by the lessor, or whether by a surrender on
the part of the lessee and an acceptance thereof by the

lessor, because, in either case, the relation of landlord and tenant would be terminated.—*Rockwell v. Eiler's Music House,* 67 Wash., 478, 122 Pac., 12, 14, 39 L. R. A. (N. S.), 894.

In view of the decision of the supreme court in the case of *Carson v. Arvantes,* 27 Colo., on page 81, it is unnecessary for us to determine whether the deposit made in this case by the contract, or the indemnity of the bond, should be considered as liquidated damages or as a penalty. The court of appeals held, in that case, where the lessee deposited with the lessor $250 and took a receipt which thereafter formed the security contract, that said contract provided for a penalty, and not for liquidated damages. The contract, so the court said, "in general terms recited the receipt of $250 as security that the lessee would remain in the store until the end of the lease, paying rent in advance, and provided that if they moved out and did not pay the rent according to the agreement, the deposit should be forfeited and become the property of the lessor." But the supreme court, in the same case, said:

"The only question presented is, did the court of appeals determine the cause on correct principles of law applicable to the facts? In determining this question, however, we do not deem it necessary to decide whether the agreement with respect to the deposit was one of liquidated damages, in case of a breach of the contract of lease, or whether it was security for damages which appellants might sustain in case the terms of that agreement were not complied with, for it could make no difference how it should be treated in this respect, if, as a matter of fact, the lease was terminated by the acts of the parties, and the rent paid up to the date when it was so canceled."

There is no conflict in the testimony as to the lessor's declaration of a forfeiture and that he demanded and re-

sumed absolute and adverse possession and control of the property, and accepted the surrender thereof; and, having done this, under the ruling of the supreme court above cited, it is unnecessary to determine whether the deposit is liquidated damages or penalty, because resumption of possession which canceled the lease canceled every claim for damages accruing subsequent to such cancellation, except such damages, however, as may have accrued up to and prior to such cancellation. And, whether the deposit was understood to be as liquidated damages or a penalty in the beginning, such acts of the lessor, by operation of law, left the deposit in his hands free from the grasp of the contract of deposit, and the money of the lessee; and, even if it were contended that the lower court erred in allowing the balance of the February rent to be deducted from the deposit, there is no contention here, and no cross-error assigned thereupon.

An examination of the lease and the other instruments accompanying it authorizes the conclusive presumption that the parties never contemplated any damages that would accrue upon any breach except that of a forfeiture of the lease and the consequent vacation and abandonment of the premises. The lessor was amply secured for such breach and would have been fully protected if he had not resumed possession, and thus elected to save himself in this way, rather than rest upon the right he had to refuse to accept the surrender of the property, and to rely upon the deposits for his security or damages. He had two means provided: one, by the terms of the lease under which he could declare a forfeiture and resume possession; the other, by refusing to accept the surrender, and resorting to the deposits; he chose the former, and this debarred him from any claim under the latter.—*Carson v. Arvantes, supra.*

The appellant, however, offered to prove that there was another damage accrued prior to the forfeiture, on

account of alterations of the second story of the building, made after the forfeiture, that cost between $3,500 and $4,000; but the lower court excluded this testimony on the ground that it was extraneous evidence, and tended to change the terms of the written agreements. The enforcement of the parol testimony rule may sometimes inflict great hardship and the rule is ofttimes more honored in the breach than in the observance, but, nevertheless, it is a wholesome general rule, not to be broken except by the exceptions, which are numerous, that usually accompany the rule itself. This proof, however, does not come within any exception, and the admission of this parol proof, that the lessee agreed that the deposit should cover the necessary cost of alterations in the building, would be adding another penalty for the breach of the lease not contained in it or in any of the contemporaneous agreements, and a damage not common or natural to the forfeiture of the lease, nor included in its general terms. If the lessor intended this damage to be provided for, it would have been easy to have inserted it in one or more of the agreements. The lessor had the assistance of counsel, and no doubt it was deliberately concluded that such damage was taken care of by the strict terms of the instrument providing for a breach of the lease on failure to pay the rents; and such was the case, if the lessor had refused to accept the surrender of the property, and rested upon his rights under the lease and the other contracts of security. He could have given notice to, or agreed with, the lessee that he would take charge of the property as agent, and that he would hold it, the lessee, for the difference between the rent actually received and what the lease called for, less expenses, during the remainder of the term; and, in such case, could have held all of the deposit as liquidated damages, or enough thereof as a penalty, to cover the difference, as damages for the breach; or he could have done what he did, declare a

forfeiture, take possession and control, and save himself from damage in that way. He could not do both. Therefore, it was not error for the lower court to exclude parol testimony as to the alteration of the building, because its admission would introduce another element or item of damage that the deposit should cover, not in any way named in, referred to, or within the meaning of, the terms of the written agreements, but duly taken care of and provided for in the strict provisions concerning forfeiture for non-payment of rent. Citation of authority would not aid us on this point, as is said by Prof. Wigmore:

"Such is the complexity of circumstance and the variety of documentary phraseology, and so minute the *indicia* of intent, that one ruling can seldom be of controlling authority or even of utility for a subsequent one. The opinions of judges are cumbered with citations of cases which serve no purpose there except to prove what is not disputed—the general principle. Other than in relation to some of the foregoing topics which have broad and uniform bearings, individual rulings can have little value as precedents unless the entire detail of the documents and circumstances is set forth; and an abbreviation of them is therefore more likely to mislead than to profit. The application of the rule should in almost all instances be left to the trial judge's determination."—4 Wigmore on Evidence, sec. 2442, p. 3443.

A careful examination of these instruments discloses that the lessor, through his counsel, deliberately concluded and believed that the provision, in the lease, and in the other instruments, for a forfeiture on account of non-payment of rents, for the term, would fully protect the lessor in all respects, including damages by reason of alterations of the building, if such damages were contemplated. This conclusion of the lessor and his counsel was a correct one, because it was no doubt so concluded with the understanding and intention that the lessor should

stand upon the terms thus provided for in case of a for-feiture, and not resume possession of the property and cut himself out of any right to rely upon the deposits. If this testimony were admitted to prove that the altera-tion of the building was one of the items of damage pro-vided against, then the parol testimony rule would be wholly abrogated, because if there is any one of its re-strictions more inviolate than another, it is the one that a party may not add to the terms of a written agreement by parol evidence, and, especially, to add another obliga-tion to those already in the writing as an addition to the burden upon the opposing party. Furthermore, this re-jected testimony would prove nothing more than that the lessor intended to provide for a forfeiture of a sufficient sum to pay him for remodelling the building; but when the contracts were drawn, all mention of the remodelling was omitted, and purposely so omitted, no doubt, because it was intended that the forfeiture itself would cover all damages incurred in remodelling. Mr. Mel E. Peters, who drew these instruments, and who testified for the lessor, stated, in his testimony, in answer to the question, "But you never incorporated in the contract which you pre-pared, that language, did you?" (meaning the language as to remodelling). A. "The intention in drawing the contract was to draw it so in case of a forfeiture of the lease that this should be paid as liquidated damages, whenever the covenants of the lease or a fracture of the covenants of the lease should end in a forfeiture of the lease—would result in a forfeiture of the lease, then the money should be paid."

All of Mr. Peters' testimony goes to show that he be-lieved, when the contracts were drawn, that a forfeiture for non-payment of rent would entitle the lessor to claim the deposits as liquidated damages, or at least as security for the damages incurred; but as the lessor took posses-sion of the property, and thereby elected to protect him-

self in a different way, oral testimony concerning the element of damage concerning the remodelling was inadmissible.

Furthermore, the moment this evidence is considered, so easily and readily reducing the damages to an exact sum, the contention of appellants as to liquidated damages is destroyed; because the courts, ever astute to discover a reason for disallowing a forfeiture, have held that, if there is a doubt, and the damage is easily computed or readily reduced to an exact amount, the parties never intended anything more than a penalty.—*Bilz v. Powell*, 50 Colo., 482.

Both parties in this case rely upon the harsh effect of two recognized rules that have been frequently enforced: one, forfeiting as liquidated damages a certain sum of money agreed upon regardless of what the damages may be in fact; the other, a rule peculiar to the law of landlord and tenant whereby the landlord may forfeit his right to claim a forfeiture against his tenant; and, while these rules are neither absolute nor of immaculate or miraculous conception, but merely applied in many adjudicated cases as a means to arrive at justice between the parties, it is not found necessary to disturb them in the conclusion reached.

The judgment of the lower court is therefore affirmed, except in so far as it affects the bond for $3,000, the lower court having denied an appeal as to that part of its judgment.

CUNNINGHAM, Presiding Judge, dissenting:

Enough appears in the majority opinion to make it plain that in the judgment of the writer of the majority opinion, it is based upon authority, rather than upon reason, for he says, in effect, that on first impression the conclusions therein arrived at do not comport with reason. One's first impressions are not infrequently his best impressions. It must be conceded that our courts

have gone a long way in matters pertaining to the law of landlord and tenant, and in matters pertaining to penalties and liquidated damages, in overthrowing the intention of parties to agreements of this sort, and making, and then enforcing, contracts which the parties themselves had not, as a matter of fact, entered into.   But I know of no well-considered case wherein the rule is announced that the interpretation which the parties to a contract have placed upon it, when clearly established, will not be enforced, where the same is reasonable and does not offend against public policy.   There was evidence offered in this case, not alluded to in the majority opinion, which tended strongly to show (indeed, to my mind, conclusively shows) that both parties to the contract of lease in this case fully understood that the $5,000 referred to in the majority opinion was to be treated as liquidated damages and was to be retained by Wilson, and by him used in the remodelling of the building, if it became necessary, because of the violation of the terms of the lease by the Psychic Society, to remodel the same. The trial court admitted this evidence when it was offered, but later struck it out and refused to consider it for any purpose.   Therein the trial court, in my judgment, clearly committed reversible error, and for that reason I cannot yield assent to the conclusions reached in the majority opinion.

Decided October 14, A. D. 1913.   Rehearing denied November 11, A. D. 1913.