[No. 17647.   Department Two.   February 28, 1923.]

# C. W. MARTIN, as *Trustee in Bankruptcy etc.*, Respondent, v. EARL E. SIEGLEY *et al.*, Appellants.[1]

BANKRUPTCY (6-3)—CLAIMS AGAINST ESTATE—REJECTION OF BANKRUPT'S LEASE. A trustee in bankruptcy may reject the bankrupt's lease and allow him to retain possession under the lease, and liable for rent; hence, the bankruptcy court's rejection of the lessor's petition to adjudicate a claim for the recovery of security under the lease is not an adjudication of the rights, but leaves the same as though there had been no bankruptcy proceedings.

LANDLORD AND TENANT (97)—RENT—REENTRY—SURRENDER—LIABILITY FOR RENT. On abandonment of a lease the landlord may retake possession and re-rent the premises without surrender of his right to a deposit of liberty bonds, put up by the lessee as security for his performance of the lease contract.

SAME (116)—ACTION FOR RENT—DAMAGES—AMOUNT OF RECOVERY. Under a lease agreement whereby the lessee deposited $5,000 in liberty bonds "to secure the performance of the covenants of the lease by the said lessee," which, in case of failure to perform, "shall be forfeited to the lessors," only compensatory damages can be recovered on the bankruptcy of the lessee and abandonment of the leased premises, to be deducted from the bonds, and the balance turned over to the lessee's trustee in bankruptcy.

Appeal from a judgment of the superior court for King county, Frater, J., entered May 6, 1922, upon findings in favor of the plaintiff, in an action to recover a deposit by a lessee as security for rent, tried to the court.   Reversed.

*Byers & Byers,* for appellants.
*Gates & Helsell,* for respondent.

PEMBERTON, J.—This is an action by respondent to recover the possession of $5,000 in liberty bonds held by appellant under the provisions of a lease agreement

[1]Reported in 212 Pac. 1057.

between appellant and the Mitchell Motor & Service Company, Incorporated, a corporation, bankrupt.

On or about May 12, 1919, appellants leased to the bankrupt certain property in Seattle for a period of ten years from and after April 1, 1920, for a cash monthly rental of $863.39. The taxes, insurance and maintenance of repairs were to be paid by the lessee. The motor company was declared bankrupt in November, 1920. Respondent remained in possession of the property covered by the lease until about June 1, 1921, and at that time surrendered the same to appellants, who re-rented the premises to a third party.

The provision in the lease with reference to the $5,000 in liberty bonds held by appellant, so far as this case is concerned, is as follows:

"5. Said lessee hereby covenants and agrees, and it is acknowledged, that the said lessee has delivered to the lessors coincident with the delivery of this instrument, the sum of Five Thousand ($5,000) Dollars in United States Liberty Bonds: . . . to secure the performance of the covenants of this lease by the said lessee, . . . and in case the said lessee shall fail to perform the covenants and agreements herein contained, then the said sum of Five Thousand ($5,000.00) Dollars, or in case securities shall be deposited, then such securities shall be forfeited to the lessors . . ."

Appellants filed in the United States district court their petition to liquidate their claim, which was denied in October, 1921. Later in the same month the respondent brought this action against the appellants to recover possession of the $5,000 in liberty bonds, claiming that appellants' rights had been adjudicated in the bankruptcy proceedings when the petition of appellants to liquidate their claim had been denied, and that a re-entry and re-renting of the premises amounted in law to a surrender of the premises by the

bankrupt and acceptance of the surrender by appellants.

The appellants answered the complaint of respondent, setting forth in their affirmative defense a copy of the lease referred to, and claiming that the bonds were held as security under the provisions of the lease, and that appellants had been damaged in a sum far in excess of the amount of the bonds so held. At the time of the trial, the respondent rested his case without offering evidence in support of the allegations of his complaint. Whereupon appellants made a motion for judgment of dismissal, which motion was denied. Appellants offered testimony in support of their affirmative defense, which, upon the objection of respondent, was refused, and judgment was entered in favor of the respondent.

We find that, under the allegations in the complaint, there was no adjudication of the question involved in this case. Appellants asked to liquidate their claim, the trustee elected to reject the lease, and by thus rejecting the lease on the part of the trustee in bankruptcy appellants' rights under the lease were the same as though there had been no bankruptcy proceedings.

"It is well settled in this country that the trustee is not bound to take a lease and charge the estate with the payment of rent, when it would be a burden and not a benefit to the estate to do so. . .

"If the trustee elects to reject the lease, it is a nullity so far as bankruptcy proceedings are concerned. In that case the bankrupt retains the term on precisely the same footing as before bankruptcy, with the right to occupy and the obligation to pay rent. . .

"The acceptance or rejection of the lease by the trustee will not release from liability a surety for the lessee. The surety will continue liable for breaches of covenant committed before the lease is surrendered." Loveland on Bankruptcy, vol. 1, § 387.

It is the contention of respondent that appellants, in taking possession of the leased premises and re-renting the same, terminated the lease, and the liberty bonds deposited as security for the payment of the rent thereby were released.

"Where a tenant deposits money as security for the payment of rent and the performance of the covenants of the lease, and is dispossessed during the term for failing to pay rent, the deposit is not forfeited; the tenant is entitled to recover the balance remaining after deducting therefrom the amount of damages suffered by the landlord from the breaches of covenants on his part prior to the dispossession. Even in some cases where the lease recites that the deposit is made as liquidated damages, the tenant has been held to be entitled to the surplus." 24 Cyc. 1143, 1144.

We find it is the rule in many states, as contended by the respondent, that, when the landlord takes possession of leased property and re-leases it to a third party, this amounts in law to a surrender of the premises, and, under such circumstances, the landlord can no longer hold the deposit to secure him for damages or a deficiency in the rent which may become due in the future. He can only recover the rent due up to the date of the surrender of the premises by the tenant.

It is the contention of appellants, however, that they had the right to reenter the premises and it was their duty to re-lease the same under as good terms as they were able to secure, in order to make the damages for breach of the lease as small as possible.

Neither of the parties have called to the attention of the court a decision in this state upon this exact point. It is said in the case of *Hickman v. Breadford,* 179 Iowa 827, 162 N. W. 53:

"The mere renting of the demised premises to another, after abandonment by the tenant, does not in

and of itself operate as a surrender in law for the reason that it is clearly to the appellee's (lessor's) interest, after having abandoned the premises, that the same should be occupied by some one who is willing to pay rental for the premises during the unexpired term of his lease. The landlord may allow the property to stand idle and hold the tenant for the entire rent, or he may lease it and hold him for the difference. . . . If the landlord succeeds in securing the same rental for the unexpired term which the original tenant agreed to pay, the tenant is relieved from responsibility to the landlord. If the landlord secures less in the re-renting, the first tenant's obligation to the landlord is reduced by the amount of the rental so received."

The following cases support this principle of law: *Miller v. Benton,* 55 Conn. 529, 13 Atl. 678; *Auer v. Hoffman,* 132 Wis. 620, 112 N. W. 1090; *Higgins v. Street,* 19 Okl. 45, 92 Pac. 153, 13 L. R. A. (N.S.) 398, 14 Ann. Cas. 1096; *Respini v. Porta,* 89 Cal. 464, 26 Pac. 967, 23 Am. St. 488; *Alsup v. Banks,* 68 Miss. 664, 9 South. 895, 13 L. R. A. 598, 24 Am. St. 294; *Auer v. Penn,* 99 Pa. St. 370, 44 Am. Rep. 114; *Marshall v. John Grosse Clothing Co.,* 184 Ill. 421, 56 N. E. 807, 75 Am. St. 181.

We believe that it is the duty of the landlord, upon abandonment of the premises by the tenant, to take possession of the leased property and re-rent it, and this should not be considered a surrender of the landlord's rights under the lease agreement, since his act in thus taking possession of the leased premises is in the interest and for the benefit of the tenant in reducing the amount of damages the tenant would necessarily have to pay as a result of his violation of the lease agreement. It is not in accordance with public policy to lay down a rule whereby the landlord would be required to permit the premises to remain idle over

a long term and thereafter recover damages for the full amount of the rentals stipulated for the term, because it is better for the parties to the agreement, as well as to the public, to have property put to some beneficial use.

The appellants are entitled to compensatory damages only, and the $5,000 in liberty bonds is held by them for their protection. Whatever amount of damages they are able to show by the testimony in the case should be deducted from the $5,000 and the amount over and above that sum should be turned over to respondent, trustee of the lessee. If the amount of damages exceed the $5,000, then the action of respondent should be dismissed.

The judgment of the trial court is reversed, and the case remanded under directions to proceed not inconsistent with the principles herein expressed.

MAIN, C. J., FULLERTON, and TOLMAN, JJ., concur.