**SLINE PROPERTIES, Inc. v. COLVIN.**

No. 6250.

United States Court of Appeals Fourth Circuit.

Argued June 13, 1951.

Decided July 17, 1951.

Cyril R. Murphy, Jr., Baltimore, Md., (Rome & Rome and H. Paul Rome, Baltimore, Md., on brief), for appellant.

Ellis Peregoff, Baltimore, Md., for appellee.

Before PARKER, SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

The controversy in this case arose when the trustee in bankruptcy set up a claim to the sum of $1200 paid by the bankrupt as rent in advance for premises in Baltimore City which were occupied by the bankrupt in the course of its business and by the trustee after the adjudication in bankruptcy. The trustee made this claim when the landlord of the premises filed its petition in the bankruptcy proceedings against the trustee for $1610.17 for the use and occupancy of the premises by the trustee. Thereupon the trustee filed a counterclaim for the said sum of $1200 contending that it was an asset of the estate which he was entitled to set off against the claim of the landlord.

On December 5, 1947, Sline Properties, Inc., a Maryland corporation, leased to Central Maritime Contracting Co., Inc., a New York corporation, the premises Nos. 102–4–6 East York Street in Baltimore for a term of five years beginning January 1, 1948 and ending December 31, 1952, at the monthly rental of $400. At the beginning of the term the tenant paid to the landlord the sum of $1200 in accordance with paragraph 2 of the lease which reads as follows:

"As rental during the term of this Lease, the Tenant covenants to pay to the Landlord rental at the rate of $4,800.00 a year, payable in equal monthly installments of $400.00 on the first day of each month in advance, the first installment being payable at the signing hereof. The Tenant further covenants and agrees at the time of the signing hereof to pay to the Landlord the sum of $1,200.00, representing rental for the months of October, November and December, 1952. This payment is for the rent of such months exclusively, and does not relieve the Tenant from its obligation to pay the sum of $400.00 on the first day of each and every month during the continuance of this Lease, except the months of October, November and December, 1952."

The tenant entered and continued in possession under the lease until April 23, 1949, when an involuntary petition in bankruptcy was filed against it. Thereafter the premises were occupied by the bankrupt estate until August 12, 1949, when the trustee surrendered the premises to the landlord and the proceedings ensued which gave rise to this appeal. The referee reached the conclusion, upon consideration of the lease, that the payment of $1200 was not a payment of rent but was only a deposit by the tenant with the landlord under an implied agreement to apply the deposit on the rent when it became due and that the deposit was the property of the bankrupt and

therefore an asset of the estate to which the trustee had title. He therefore ordered the trustee to pay to the landlord the sum of $410.17, that is to say, the amount of the claim of $1610.17 for the occupancy of the premises by the trustee, less the amount of the deposit.

The decision depends upon the interpretation of the lease. If the deposit was made by the tenant as security for the performance of the covenants in the lease, it remained the property of the tenant and passed to the trustee in bankruptcy subject to the claims accruing to the landlord by reason of the tenant's default; but if the deposit was in fact payment of rent in advance it became the property of the landlord and the trustee has no title to it and no right to use it as an offset to the landlord's claim for use and occupancy of the premises by the trustee. In our opinion the latter alternative is the effect to be given to the contract. In paragraph 2 of the lease, as we have seen, the tenant expressly agrees as follows,—"to pay to the landlord the sum of $1200 representing rental for the months of October, November and December, 1952. This payment is for the rent of such months exclusively and does not relieve the tenant from its obligation to pay the sum of $400 on the first day of each and every month during the continuance of this lease except the months of October, November and December, 1952." The remainder of the lease contains no provisions in qualification of these precise statements. No provision appears such as is frequently found in leases of this kind in which it is expressed or from which it may be implied that the deposit was made by the tenant as security for the performance of the contract.

The case therefore differs from the decisions on which the trustee relies in which the lease expressly provided that the deposit was to be held by the landlord as security for performance on the part of the tenant ·or it was agreed that the lessor should pay or account to the tenant for a specified sum as interest on the monies in the landlord's hands, indicating that the bankrupt retained title to the money. [1]

Even in Cunningham v. Stockon, 81 Kan. 780, 106 P. 1057, which goes as far as any case to support the trustee's theory although there was no statement that the deposit was made for security, the court inferred that it must have been so intended because the amount advanced was very large, the payment was made before the construction of the leased building was begun, and it was stipulated that the deposit was to be applied for the rental for the last year of the term. In short, the decision was based primarily on the conclusion that the deposit was made for security and not in payment of the rent.

■■■ When payment of rent in advance rather than security for future performance is found to be the intention of the parties, the authorities are uniform in holding that the deposit belongs to the landlord when the lease is terminated by the tenant's default and the tenant has no claim upon it. Thus in Schoen v. New Britain Trust Co., 111 Conn. 466, 150 A. 696, a theatre was leased for a period of ten years at a rental of $300 a week, and $15,000 was deposited with the lessor to be applied on the last year's rent. Since there was a complete absence of anything in the lease indicating that the money was a mere deposit as security for rent the court held that it was a prepayment of rent and determined the disposition of the deposit in these words, 150 A. at page 699: "* * * Rent paid in advance at the beginning of the lease in conformity with its terms becomes upon such payment the property of the lessor. The same conclusion must be reached as to any rent paid in advance, whether it be for a period of time at the

1. See In re Tanory, D.C.N.D.N.Y., 270 F. 872; In re Schiff, D.C.S.D.N.Y., 295 F. 575; Carstens v. McLean, 9 Cir., 7 F.2d 322; Martin v. Siegley, 123 Wash. 683, 212 P. 1057; In re Sherwoods, 2 Cir., 210 F. 754; Jensen v. Sparkes, 9 Cir., 53 F.2d 433; Reed v. Bristol County Realty Co., 250 Mass. 284, 145 N.E. 455; English v. Richardson, 80 N.H. 364, 117 A. 287, 22 A.L.R. 1302; In re Barnett, 2 Cir., 12 F.2d 73; In re Homann, 2 Cir., 45 F.2d 481; Alvord v. Banfield, 85 Or. 49, 166 P. 549; Richman v. Joray Corp., 4 Cir., 183 F.2d 667.

middle of the lease or for the last year of the lease. In either case it becomes the property of the lessor as soon as the period to which the rent is applicable arrives. When the default of the lessee makes impossible his performance of the contract of lease, the law accelerates the time when the advance rental becomes the property of the lessor to the time of termination of the lease. The large majority of our courts which have been required to pass upon this question have established the rule to which we subscribe: The termination of a lease by the default of a lessee, who has in accordance with the terms of the lease made an advance payment of rent before such payment was to be applied as rent, automatically vests the ownership of such advanced payment of rent in the lessor upon the occurrence of the termination in the absence of provision in the lease leading to a contrary disposition."

A similar conclusion was reached in Galbraith v. Wood, 124 Minn. 210, 144 N.W. 945, 43 L.R.A.N.S., 1034, where the tenant was adjudicated a bankrupt. In this case, as in others, the court found no difficulty in applying the rule from the fact that the deposit was designated as payment for the last portion of the term. In this respect the court said, 144 N.W. at page 948: "Under these rules, had the lease required Kibbe to pay the first year's rent in advance, and had he done so, the re-entry of defendants six months after the tenancy began for breach of conditions by Kibbe would operate to terminate the relation of landlord and tenant, but would not entitle Kibbe to recover any portion of the rent so paid. This would be so though the lease had not provided that the rent so paid would be forfeited. Does it change the situation that the payment was made as advance rent for a part of the term in the future after the time the relation has ceased? It is said that, because there is no occupancy of the leased premises, no rent is earned. But the same may be said of any case where rent has been paid in advance and the tenancy terminated before the period for which the rent was so paid expires."

See also Casino Amusement Co. v. Ocean Beach Amusement Co., 101 Fla. 59, 133 So. 559; Rockwell v. Eiler's Music House, 67 Wash. 478, 122 P. 12, 39 L.R.A.N.S., 894; Tiffany on Landlord & Tenant, (1910 Ed.) pp. 1099, 1179; 52 C.J.S., Landlord and Tenant, §§ 472–(b) (2), 545; 32 Am. Jur., Landlord and Tenant, § 875; Annotation, 50 L.R.A.N.S., 1034. Cf. Burns Trading Co. v. Welborn, 10 Cir., 81 F.2d 691, 106 A.L.R. 285.

The order of the District Court must therefore be reversed and the case remanded for further proceedings consistent with this opinion. We have no need to consider the alternative position that even if the fund were deposited for security the landlord has the right to retain it until the damages, if any, caused by the trustee's repudiation of the lease have been ascertained.

Reversed and remanded.