402 P.2d 966

**Arvel D. KING, Plaintiff-Appellant,**

**v.**

**BEATRICE FOODS COMPANY, a corporation, doing business as Idaho Creameries, Defendant-Respondent.**

No. 9518.

Supreme Court of Idaho.

June 4, 1965.

Rehearing Denied June 28, 1965.

Fredricks, Walters & Fredricks, Boise, for appellant.

Richards, Haga & Eberle, Boise, for respondent.

· TAYLOR, Justice.

In 1960 plaintiff (appellant) became interested in acquiring a "milk route" and an agreement with defendant (respondent) for the delivery of milk from the producers to defendant's processing plant in Boise. Such routes were operated by truckers under contract with defendant. The routes and the producers were designated by the defendant. The drivers provided their own trucks and trailers and paid their own expenses and were compensated by defendant on the basis of the hundred weight of milk delivered. The routes were claimed as assets by the various drivers and were from time to time sold by drivers as such. This practice was known to and acquiesced in by defendant.

Plaintiff negotiated the purchase of a route from one Shrivner for $9000. This price included the physical assets of the "business," that is, $2800 for a used 1958 Dodge truck and $1000 for a homemade trailer. The balance of the purchase price was for "blue sky." It was necessary for plaintiff to borrow the money to make this purchase. This he was unable to do without the backing of a five-year contract with defendant. This situation was made known to the defendant and on March 1, 1960, the parties entered into a contract for the hauling of milk by plaintiff from producers on the Scrivner route to defendant's plant, during the succeeding five years. The contract obligated defendant to pay to plaintiff 22¢ per hundred pounds of milk delivered. All, except one, of other similar route contracts entered into by defendant were for the period of one year, and customarily had been extended from year to year. The one exception was for a two-year period.

Although the contract here involved did not specifically require delivery of milk

in cans, such delivery was intended by the parties. The pertinent provision was:

"The carrier agrees to furnish milk and cream delivery and empty can return transportation from and to producers designated by the Company,

\* \* \*"

Likewise, prior to 1962, all such contracts were for the transportation of milk in cans.

In January, 1962, defendant began bulk tank operation and began curtailment of haulage in cans. At the end of October, 1962, it had dismantled its can service facilities and would no longer accept delivery of milk in cans, which prevented plaintiff's further performance of the contract. Plaintiff brought this action for damages for breach of contract.

A jury trial resulted in a verdict for plaintiff. Thereafter, judgment was entered in favor of the defendant notwithstanding the verdict, and plaintiff brought this appeal.

Defendant makes three defensive contentions; first, there was no breach of contract; second, defendant's failure to perform was excused; third, no damages were established by the evidence.

As to the first, it is defendant's contention that plaintiff became the agent of the producers for the delivery of their milk to defendant; that the contract does not spe-

cifically require defendant to accept milk delivered in cans; and that since plaintiff was aware that delivery of milk in cans might be discontinued, such discontinuance was contemplated by the parties, hence no breach of contract resulted therefrom.

Defendant's second contention was that a change from can delivery to bulk tank delivery became necessary in order to enable defendant to qualify its plant under public health regulations as a "Grade A" plant.

■ The trial court concluded that defendant did breach its contract and that the breach was not excused. We agree with these conclusions. Plaintiff contracted with defendant, not with the producers. The contract obligated defendant to accept deliveries by plaintiff in cans during the term of the contract. Defendant's change to bulk tank delivery, though desirable, was not compelled by any public law or regulation.

The trial court upheld defendant's third contention, and in entering judgment for defendant notwithstanding the verdict, held that plaintiff had sustained no damage by reason of defendant's breach of the contract.

Plaintiff claimed a right to recover the $9000 paid for the route, less the salvage value of the truck and trailer at the time of the breach, and also loss of profits antici-

pated from the full performance of the contract.

◼ Where performance of a contract has been prevented by the breach of one of the parties, the injured party may recover the reasonable expense which he has incurred in anticipation of performance. French v. Nabob Silver-Lead Company, 82 Idaho 120, 350 P.2d 206 (1960); Lloyd v. American Can Co., 128 Wash. 298, 222 P. 876 (1924); United States v. Behan, 110 U.S. 338, 4 S.Ct. 81, 28 L.Ed. 168 (1884); 25 C.J.S. Damages § 46, pp. 524–525. In the alternative the injured party may recover the amount of profits which he can prove with reasonable certainty would have accrued to him from full performance. Pacific Northwest Bell Telephone Co. v. Rivers, 88 Idaho 240, 398 P.2d 63 (1964); Curzon v. Wells Cargo, Inc., 86 Idaho 38, 382 P.2d 906 (1963); Head v. Crone, 76 Idaho 196, 279 P.2d 1064 (1955); Williams v. Bone, 74 Idaho 185, 259 P.2d 810 (1953); Molyneux v. Twin Falls Canal Co., 54 Idaho 619, 35 P.2d 651 (1934); 25 C.J.S. Damages § 42, pp. 516–517. Defendant contends that plaintiff may not recover both reliance damages and loss of profits, since to do so would in effect allow double recovery. In this case the defendant's contention is correct only because plaintiff did not charge the amount of his reliance expenditures against anticipated income in calculating anticipated profits. A correct expression of the rule is found in Annotation, 17 A.L.R.2d 1300, § 8 at 1316:

"Where the plaintiff seeks to recover the prospective profits of the contract, or the value of it, and seeks to recover also his expenditures in preparation for its performance, the first consideration is whether those expenditures so enter into the cost of his performance as to be deducted from the contract price in figuring his profits or the contract value. If they do, they usually are recoverable in addition."

◼ In establishing his claimed loss of profit, plaintiff used the first 22 months of the period of his operation under the contract as a fair basis for determination of his anticipated profits. That was a period when his operations under the contract were carried on in a normal manner. Following that period, because of the pending change from can delivery to bulk tank delivery, and the loss of producers on his route occasioned thereby, plaintiff's operations were not normal nor such as may have been anticipated under circumstances of full compliance on the part of the defendant. Therefore, the initial 22-months period may be accepted as a fair basis of experience for determination of plaintiff's anticipated profits. His proof tended to show a profit during that period of $210.50 per month. Extended over the balance of the period of the contract from the end of

December, 1961, a period of 38 months, this loss of profit would amount to $7,999. During the months from January 1, 1962, to October 1, 1962, when plaintiff claimed defendant's activity in switching from can to bulk deliveries was destroying his business, plaintiff's evidence tended to show a profit of $95. This would reduce plaintiff's total claimed loss of anticipated profits to $7,904. However, as defendant points out, plaintiff did not charge against his operating income a wage for himself, or another, as operator of the truck. Since this was not a contract for personal services, but one which allowed plaintiff to hire others to do the work for him, a reasonable wage for the operator of the truck should have been charged against the income, even though plaintiff operated the truck himself. Buck v. Mueller, 221 Or. 271, 351 P.2d 61, 67 (1960); Kalin v. 1855–81st Street Corporation, Sup., 24 N.Y.S.2d 357 (1940); Jewett v. Wilmot, 51 Neb. 700, 71 N.W. 775 (1897).

Upon trial evidence was admitted that plaintiff was earning $360 per month in the employment in which he was then engaged, and the trial court in its memorandum decision referred to plaintiff's earning capacity in other employment as $300 per month. However, defendant was not entitled to have such earnings offset against its liability to plaintiff for loss of profits. Gollaher Const. Co. v. Midwood Construction Co., 194 Cal.App.2d 640, 15 Cal.Rptr.

292 (1961); McCormick, Damages, § 41 (1935); Annotation 15 A.L.R. 751.

As stated, plaintiff's contract permitted him to perform his contract through the employment of others. The daily collection and delivery of the milk on his route required only six hours. If plaintiff could employ a driver to do that work for him at a wage less than he, himself, could earn in other employment, he was entitled to do so. In such event, he would be required to charge against his operating income, as an item of operating expense, only the wage which he was required to pay another for operation of the truck; and defendant would not be entitled to claim any greater sum as an offset against its liability under the contract, for that item.

No evidence was admitted upon the trial as to a reasonable wage for the operation of the milk truck. Plaintiff's income tax returns show that he paid out $2,982 in wages during the eleven months while he was in the service, or $271 per month. However, the record does not reveal whether this entire amount was paid for the services of operators of the truck.

It may be stated as a general proposition that, in an action for damages occasioned by breach of a partially executed contract such as this, the purpose or objective of the court is to place the injured party, so far as may be, in the position no

better and no worse than he would have occupied had the contract been performed. This proposition, along with others applicable to other situations, was ably presented by Fuller & Purdue in the Yale Law Journal, V. 46, No. 1, pp. 52 et seq. (Nov. 1936) under the title "The Reliance Interest in Contract Damages." See also: 5 Williston on Contracts, Rev. Ed. 1937, §§ 1338, 1339; Carey v. Lafferty, 59 Idaho 578, 86 P.2d 168 (1938); Albert & Son v. Armstrong Rubber Co. (1949) 2 Cir., 178 F.2d 182, 17 A.L.R.2d 1289, and anno. 1300; 25 C.J.S. Damages § 74.

Referring to plaintiff's claimed reliance damages, a normal charge against operating income to cover depreciation of the truck and trailer during the time the contract was in effect, plus the salvage value of the equipment at the date of the breach, should equal and offset the initial expense in acquiring such equipment.

The balance of the reliance expenses of $5,200, cost of acquisition of the route, would necessarily have to be repaid out of earnings before plaintiff could derive a final profit from the venture. However, if plaintiff could have earned a profit, over and above his operating expenses including a reasonable wage for the operator of the truck, that profit however small would have compensated him in part at least for this reliance expense. In such event performance would have provided plaintiff a partial recovery of his reliance expense which the breach denied him. Therefore, if plaintiff can prove such a profit with reasonable certainty, he would be entitled to a judgment against defendant for the amount thereof.

The judgment is reversed and the cause remanded for a new trial.

Costs to appellant.

McQUADE, C. J., and McFADDEN, SMITH and KNUDSON, JJ., concur.