E. Weiman, Individually, and d/b/a Metered Laundry Co., Plaintiff-Appellee, v. Louis Butterman, Individually and d/b/a L. Butterman and Associates, Defendant-Appellant.

Gen. No. 53,752.

First District, First Division.

May 11, 1970.

Jacobs, Lieberman and Aling, of Chicago (Eugene Lieberman, of counsel), for appellant.

Blumenfeld and Blumenfeld, of Chicago (Michael J. Caliva, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is an action based on a written agreement under which plaintiff installed coin-operated washers and dryers in the laundry room of an apartment building. Defendant subsequently purchased the building and plaintiff's machines, after being disconnected, were displaced by similar machines installed by another company. Plaintiff contended the original agreement was a lease, and defendant asserted the agreement was a license. In a nonjury trial, the court found for plaintiff and judgment was entered for $2,775.

On appeal defendant contends (1) that the agreement was a mere license and not binding upon a subsequent purchaser of the building; and (2) that the damages assessed were not supported by the evidence.

On December 18, 1962, plaintiff entered into an agreement with A. Goldsmith, owner of the premises at 725 North Central Avenue in Chicago, covering the installation and operation of coin-operated washers and dryers. The agreement, which was entitled "Lease," contained the following terms:

> This lease entered into this 18th day of December, 1962, by and between 725 N. Central Building, hereinafter known as Lessor, and E. Weiman d/b/a Metered Laundry Company, hereinafter known as Lessee.

1. The Lessor hereby rents and leases to said Lessee the premises known as the laundry-room located at the north central section of ground floor being a room approximately 18′ x 40′, located in the building commonly known as 725 N. Central Ave., Chicago, Ill., for the purpose of installing and operating coin-operated washers and dryers.

2. The term of this lease shall be for five (5) years, beginning the 18th day of December, 1962, and ending the 17th day of December, 1967, with an option on the part of the lessee to renew said lease for an additional period of five (5) years under the same terms and conditions as are contained herein. Lessee is to exercise this option by mail, to the last known address of the Lessor, a minimum of thirty (30) days prior to the expiration of this lease.

3. The Lessee agrees to pay to the Lessor as and for the rental of the above described premises a sum equal to 25 percent of the gross receipts from the operation of the washers and dryers which will be from time to time operated at said premises. Said Lessee further agrees to pay said amount every six months, beginning the 15th day of January, 1963.

4. Lessor agrees to furnish the Lessee without charge to said Lessee, all necessary electricity, heat, gas and water, both hot and cold, for the continued operation of the washers and dryers installed or to be installed on said premises.

5. Lessor agrees that the title to all washers, dryers and all other equipment necessary for the operation and maintenance of said washers and dryers shall remain in the Lessee at all times, and said Lessee may remove same at the termination of this lease. Lessor further agrees that the Lessee may assign

this lease without the consent, either written or oral, of the Lessor.

6. Lessor agrees that for and in consideration of Lessee's rental of the premises above described, Lessor will not during the term of this lease, allow any other coin-operated washer or dryer to be installed or operated in the above described premises.

IN WITNESS WHEREOF, the parties have caused this lease to be executed under their seals on the date first above written.

Thereafter, plaintiff installed two washers and one dryer with coin boxes in the laundry room, ran an electrical line, a gas line, and made water openings in the laundry room. A sign with plaintiff's name and telephone number was posted in the laundry room close to the equipment. Plaintiff had no key to the laundry room and the door was customarily open day and night.

Defendant purchased the premises from Goldsmith on September 1, 1966. The contract of sale listed as tenants only the apartment dwellers and did not list plaintiff. Plaintiff never spoke to defendant prior to the sale of the building and defendant did not see the agreement between plaintiff and Goldsmith until a number of weeks following defendant's purchase of the building. However, before the purchase, defendant inspected the premises and saw the washers and dryers, but made no inquiry as to their ownership. After the building was sold, plaintiff's machines were replaced by those of a competitor.

Defendant initially contends that the agreement between plaintiff and Goldsmith was a mere license, and hence not binding on a subsequent purchaser of the realty. He principally relies on two New York cases involving a similar question: Wash-O-Matic Laundry Co., Inc. v. 621

Lefferts Ave. Corp., 191 Misc 884, 82 NYS2d 572 (1948) (trial court); and Kaypar Corp. v. Fosterpoint Realty Co., 69 NYS2d 313 (appellate court), affirmed 72 NYS2d 405 (1947).

In Wash-O-Matic Laundry Co. v. 621 Lefferts Ave. Corp., the contract of purchase of the building containing the washing machines made no reference to the agreement concerning the installation of the machines, and the agreement was not recorded. In holding for defendant, the court stated (p 575):

> "On all the evidence I hold that the defendant did not have actual or constructive notice of the existence of the agreement when it purchased the property. In the absence of such notice the defendant was not bound by the agreement. . . .

> ". . . The agreement here did not confer upon plaintiff exclusive possession of any definite space as against the owner of the property; it merely granted a license to install and maintain certain laundry equipment in space designated on a diagram as 'washing machine room.' This is not a sufficient delineation of an identifiable space so as to create a grant thereof. It may not be said that by virtue of this agreement the owner of the building could not require the plaintiff to move the machines to another part of the basement, if necessary."

In Kaypar Corp. v. Fosterpoint Realty Co., the question was whether the plaintiff could claim the protection of the New York Rent Control Law. The court stated (p 316):

> "The main object of the agreement is to procure for the tenants of defendant a laundering service. The plaintiff agrees to furnish the service. The plaintiff, through its installations, is granted a license or privilege to occupy the land for the purpose of performing its contract of furnishing this laundry

service to the tenants. The plaintiff has no ownership of the space allotted to its equipment in the sense that usually obtains in the relationship of landlord and tenant. In a lease the tenant is the owner of the premises for the term therein specified. The rent is the purchase price for outright ownership for the duration of the term. In the instant matter, all that is granted by the terms of the contract, properly read, is a license to use the designated space for the installation and maintenance of its machines. If the occupation of the land is in connection with a service to be rendered to the landlord, then the possession continues to be that of the landlord."

Defendant further argues that this type of situation is similar to a concession where the concessionaire operates an enterprise upon realty and pays a stipulated rental based upon profits derived from the concession. He notes that these are construed as licenses and not leases. Day v. Luna Park Co., 174 Ill App 477 (1912).

Defendant finally argues that even if the agreement was a lease, plaintiff did not record and defendant had no notice of the agreement as provided by the Recording Act (Ill Rev Stats, c 30, § 29). He points out that possession of realty, in order to constitute "notice" under the Act must be open, visible, exclusive and unambiguous, such as is not liable to be misunderstood. Millikin Trust Co. v. Gregory, 292 Ill App 28, 10 NE2d 853 (1937); Mack v. McIntosh, 181 Ill 633, 54 NE 1019 (1899).

We are not persuaded that defendant's authorities apply here. In 24 ILP, Landlord and Tenant, § 26, p 272, it is said:

"No particular words are necessary to create a lease, and, in determining whether a particular instrument amounts to a lease, greater regard should be had to the clear intent of the parties than to any particular words which may have been used in the expression

of that intent. It has been stated to be the rule in Illinois that the only essentials to the creation of a valid lease are a definite agreement as to the extent and bounds of the property leased, a definite and agreed term, and a definite agreement as to the price of rental and the time and manner of payment."

In Bournique v. Williams, 225 Ill App 12 (1922), it is said (p 20):

" 'Under the authorities, to create a valid contract of lease, but few points of mutual agreement are necessary: First, there must be a definite agreement as to the extent and bounds of the property leased; second, a definite and agreed term; and third, a definite and agreed price of rental, and the time and manner of payment. These appear to be the only essentials.' This is the rule in Illinois."

■ In the instant case the intention of the parties is clearly shown. The instrument is entitled "Lease," refers to the parties as "Lessor" and "Lessee," and gives plaintiff the exclusive right to operate its machines in a specified area for a definite term. Also, the provision that plaintiff could not assign the contract without the consent of the lessor is a provision inconsistent with licensing agreements. (Mueller v. Keller, 18 Ill2d 334, 164 NE2d 28 (1960).) We find the agreement here was a lease and is to be so viewed in litigation regarding it.

■■ Next considered is whether defendant had notice of the lease so as to prevent him from being a protected party under the Recording Act. Generally, actual notice of possession is immaterial if the facts were sufficient to put a purchaser on inquiry. "It is well settled that whatever is sufficient to put a party upon inquiry is notice of all facts which pursuit of such inquiry would lead to, and without such inquiry no one can claim to be an innocent purchaser as against him whose possession raises the inquiry." (Bryant v. Lakeside Galleries, Inc.,

402 Ill 466, 477, 84 NE2d 412 (1949).) Here, defendant inspected the laundry room and saw the two washers and dryer with coin slot machines in them. Although he denied seeing it, the evidence shows that a sign with plaintiff's name was prominently displayed on one of the walls of the laundry room. In our opinion this was sufficient to put defendant on inquiry and sufficient for the trial court to find that defendant had notice of plaintiff's possession and interest in the premises.

Defendant also contends that the award of damages was not supported by the evidence. He asserts that plaintiff testified that his income from the washers and dryer was about $40 or $50 per month, less 25% payment to the owner and service charge of $1.00 per month. He points out that since seventy-four months remained on the contract, "simple arithmetic shows that 74 times 40 comes to $2,960.00, less 25% to the owner and $74.00 service amounts to $2,146.00. Nevertheless, the judgment order was for $2,775.00. Damages must be based upon testimony, not conjecture; a rule so basic that no authorities should be necessary."

■ We find no merit in this contention. Although it is not clear just how the trial court arrived at its estimate of damages, particularly with regard to the $74 alleged as a service charge, the record shows an extensive discussion on the issue of damages. The complaint alleged that the income derived from the operation of the washers and dryer amounted to $50 per month. The alleged computation made by plaintiff, after paying to the lessor his 25%, left the plaintiff the net sum of $37.50 per month, and for seventy-four months this amounts to $2,775, the amount allowed by the court. The record before us does not include any evidence which shows otherwise.

For the reasons given, the judgment is affirmed.

Affirmed.

BURMAN, P. J. and ADESKO, J., concur.