492 P.2d 57

**YOUNG ELECTRIC SIGN COMPANY, a corporation, Plaintiff-Respondent and Cross-Appellant,**

v.

**O. M. CAPPS and Ralph E. Faught, Defendants-Appellants and Cross-Respondents.**

No. 10848.

Supreme Court of Idaho.

Dec. 23, 1971.

Kramer, Plankey, Smith & Beeks, Twin Falls, for appellants and cross-respondents.

Rigby & Thatcher, Rexburg, for respondent and cross-appellant.

McFADDEN, Justice.

This action was instituted by Young Electric Sign Company, a Utah corporation (hereinafter referred to as Young Elec-

tric), as plaintiff against O. M. Capps and Ralph E. Faught, defendants, appellants and cross-respondents (hereinafter referred to as lessees). The action was based on a sign rental agreement dated November 3, 1965, executed by the lessees, who were operating the Griggs Motel in Twin Falls, and by Young Electric Sign Company, an Idaho corporation. The Idaho corporation was a wholly owned subsidiary of the plaintiff in this action; the Idaho subsidiary merged with the plaintiff, the parent company, in 1966, and the plaintiff qualified to do business in Idaho in February, 1967.

Prior to execution of the November, 1965, agreement, the lessees' predecessors had entered into several sign rental agreements with Young Electric pertaining to the same signs which are involved in this action and are the subjects of the November, 1965 agreement.

The rental agreement, although providing for construction and maintenance of three signs, actually concerned the three signs which had been previously constructed and installed by the Idaho corporation. At the time this action was heard by the trial court in August of 1970, two of the signs were located at the Griggs Motel, the former Covey's Motor Lodge, and the Alley Lounge, being the same premises occupied by defendant's predecessor. The third sign, previously situated two blocks from the motel premises, had been removed at lessees' request by Young Electric prior to the institution of this action.

The agreement in question was a renewal agreement of the previous sign contracts. This agreement was for a sixty month period at $75.00 per month. The original agreements had provided for much greater monthly payment, but after negotiations between Young Electric's employee and the lessees, the lower figure was agreed to.

After five months, lessees defaulted in their rental payments and advised Young Electric, by letter, to discontinue servicing the signs and to stay off the Griggs Motel property. Young Electric immediately ceased maintenance of the signs, and, asserting that lessees converted the signs, has paid no taxes on them since 1965. This suit was instituted and by its last amended complaint Young Electric sought to regain possession of the signs, for damages in accordance with the liquidated damages clause in the agreement, and for attorneys fees as provided for in the agreement. The liquidated damages clause [1] provides that upon breach by the lessee, Young Electric as lessor may recover 100% of the balance of rental value of the signs as long as lessees retain possession of the signs, and 75% of the rental value, after the signs are returned to Young Electric.

1. The clause reads:
"(i) It is agreed by the parties hereto that the SIGN is of special construction made for the uses and purposes of Lessee and no other, and that except for use by Lessee the SIGN has no value. Lessee agrees that in the event he shall be in default in the payment of rental when due, or shall fail to perform any other of his obligations hereunder, he shall be indebted to, and hereby agrees to pay to Lessor forthwith, in addition to the full rental for such time as Lessee retains possession of the SIGN, liquidated damages for his breach hereunder in an amount equal to three-fourths of the balance of the rental payable hereunder, whether the same may be due or not. The parties hereto agree that in such event, tho [sic] said three-fourths of the balance of the rental payable hereunder is and will be fair and reasonable compensation for the damage to Lessor arising from such breach by Lessee. It is understood that in the event Lessee cancels the agreement before the layout or fabrication of the SIGN has been commenced, he will pay to Lessor as liquidated damages for the breach of his agreement an amount equal to 25% of the total of this agreement. The agreement to pay such liquidated damages shall be in addition to any other remedy given Lessor herein or by law. In the event this agreement is placed by Lessor in the hands of an attorney after default for enforcement or collection, Lessee will pay a reasonable attorney's fee."

The district court found that Young Electric was the owner of the signs and, therefore, was entitled to repossession of the two signs that were retained by the lessees. The court ruled that the letter advising Young Electric to discontinue service coupled with the failure of the lessees to pay the rentals constituted a material breach of the contract, but then held that the provision for liquidated damages constituted a penalty, and hence was unenforceable. The trial court computed damages for the breach of the rental agreement at 7% of the $75.00 monthly rentals for the remainder of the term of 55 months and entered judgment for damages at $288.75, plus accrued interest of $52.80, attorneys fees of $136.62, and costs of $88.65, totaling $566.82. The district court in computing the damages as being 7% of the rentals reserved in the agreement reasoned that the 7% figure constituted the amount of net income to lessors from the rental agreement.

▉ The lessees appealed, presenting two principal issues, the first issue is based on their contention made throughout the trial, and also before this Court, that Young Electric had no capacity to sue. The second issue is that Young Electric could not prevail in any event, for it failed to establish any damages whatsoever, and also that they had abandoned the signs. The trial court did find that Young Electric had not abandoned the signs in question. The record reflects competent and substantial evidence to sustain this finding, and thus, this Court will not disturb such finding. Reardon v. Union Pac. R. R. Co., 93 Idaho 833, 475 P.2d 370 (1970).

Young Electric has also appealed from the judgment, and by its cross-appeal contends the district court erred in ruling the liquidated damages clause of the agreement unenforceable, and in using the net income standard to calculate compensatory damages.

Lessees contend that Idaho Const. art. 11, § 10 [2] and I.C. § 30–504 [3] preclude Young·Electric from maintaining an action on the agreement since Young Electric was not qualified to to business in the state at the time the agreement was executed. Although Katz v. Herrick, 12 Idaho 1, 86 P. 873 (1906), contains language supporting this contention, recent cases explicitly hold that the qualification to do business within the state by a foreign corporation prior to trial suffices to allow such foreign corporation to maintain an action on a contract executed prior to the time the corporation had so qualified. Twin Harbors Lumber Co. v. Carrico, 92 Idaho 343, 442 P.2d 753 (1968); Spokane Merchants' Ass'n v. Olmstead, 80 Idaho 166, 327 P.2d 385 (1958).

"The [contract] would not be void though plaintiff had not qualified to do business in this state. The disability affects only the remedy. *Qualification at the time of trial is sufficient to entitle plaintiff to maintain the action.*" Spokane Merchants' Ass'n v. Olmstead, *supra*, 80 Idaho at 170, 327 P.2d at 387 (citing among others, Katz v. Herrick, *supra*.) (Emphasis added.)

▉ Since Young Electric qualified to do business in Idaho in 1967, and before this action was instituted, it had the capacity to maintain the action based on the agreement in this case.

2. Idaho Const. art. 11, § 10. "Regulation of foreign corporations.—No foreign corporation shall do any business in this state without having one or more known places of business, and an authorized agent or agents in the same, upon whom process may be served; and no company or corporation formed under the laws of any other country, state, or territory, shall have or be allowed to exercise or enjoy, within this state any greater rights or privileges than those possessed or enjoyed·by corporations of the same or similar character created under the laws of this state."

3. I.C. § 30–504. "Noncompliance—Effect on contracts.—No contract or agreement made in the name of, or for the use or benefit of, such corporation prior to the making of such filings as provided in sections 30–501 and 30–502 can be sued upon or enforced in any court of this state by such corporation."

The question as to whether the court erred in failing to grant the lessees' motion to dismiss on the grounds of the failure of Young Electric's proof of damages is intertwined with Young Electric's cross-appeal on the issue of the validity of the liquidated damage clause of the agreement. Specifically, resolution of the issues of the cross-appeal must first be made before this Court can properly consider the lessees' assignments of error directed to the award of damages by the district court.

At issue here is the validity of that portion of the liquidated damages clause which provides for the realization of 75% of the rental value as the amount to be awarded as damages for the breach of the agreement. The provision authorizing 100% of the rental value while the signs are in the lessees' possession is not before the Court, as all that Young Electric seeks comes under the 75% provision, even though the lessees retained possession of two of the signs.

This Court, dealing with liquidated damage provisions in real estate contracts has stated:

"Generally speaking, parties to a contract may agree upon liquidated damages in anticipation of a breach, in any case where the circumstances are such that accurate determination of the damages would be difficult or impossible, and provided that the liquidated damages fixed by the contract bear a reasonable relation to actual damages. But, where the forfeiture or damage fixed by the contract is arbitrary and bears no reasonable relation to the anticipated damage, and is exorbitant and unconscionable, it is regarded as a 'penalty,' and the contractual provision therefor is void and unenforceable." Graves v. Cupic, 75 Idaho 451 at 456, 272 P.2d 1020 at 1023 (1954).

In Graves v. Cupic, *supra*, this Court adhered to the general rule concerning the validity of liquidated damage clauses as set forth in American Law Institute, Restatement, Contracts, § 339 (1932):

"(1) [A]n agreement, made in advance of breach, fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless

(a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and

(b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation."

See also Melton v. Amar, 83 Idaho 99, 358 P.2d 855 (1961).

First considering the second requisite of this rule (i. e., that the harm caused by the breach is one that is incapable or very difficult of accurate estimation), it must be noted that neither party commented specifically on what facts were present in this record pertaining to this issue. However, the facts and circumstances concerning the rental agreement and its breach are such that this Court concludes the requisite of difficulty in estimation of damages is met.

■ Although a categorization of this agreement is not crucial to this opinion, it is this Court's conclusion that the particular agreement technically created a bailment for hire. See Ray v. Electrical Products Consolidated, 390 P.2d 607 (Wyo. 1964); Electrical Products Corp. v. Mosko, 88 Colo. 447, 297 P. 991 (1931). Under this type of agreement, generally the damages caused by lessee's breach cannot reach the full amount of unpaid rentals when the leased articles are reclaimed by the lessor. Ray v. Electrical Products Consolidated, *supra*, 390 P.2d at 608; Electrical Products Consolidated v. Sweet, 83 F.2d 6 (10th Cir. 1936). Here, where the signs are being returned to Young Electric, allowance must be made for the value of the signs as returned in considering the damages to Young Electric.

■ The subjects of this agreement are unique chattels—neon signs constructed and designed especially for use on the lessees' premises. The rental agreement pro-

vides, "except for use by the lessee, the [signs have] no value." (See footnote 1, *supra.*) Except in the fortuitous and unlikely event that an identically named business is found, signs designed to advertise "Griggs Motel" and the "Alley Lounge" could not be put to a useful purpose by anyone other than the lessees. Since the value of the signs themselves is questionable, it follows that computation of the actual damages to Young Electric is "incapable or very difficult of accurate estimation." In addition there is another element to be considered. This agreement was not only for the use of the signs by the lessee, but also imposed upon Young Electric the burden of upkeep and maintenance of the signs. The charges under the agreement incorporated compensation to Young Electric for these services as well as for the use of the signs.

Because of these factors, it is clear that the actual damages caused by the breach of the agreement are sufficiently difficult to accurately estimate so as to satisfy the second part of the liquidated damage rule stated above.

In order to sustain the liquidated damages clause, it must also appear that the stipulated amount bears a reasonable relation to the damages actually sustained. As stated in Walker v. Nunnencamp, 84 Idaho 485, 490, 373 P.2d 559, 562 (1962):

"* * * Our rule pertaining to contract provisions for liquidated damages requires that they be in a reasonable relation to the actual damages. If the forfeiture fixed by the contract is arbitrary and bears no reasonable relation to the anticipated damages, and is exorbitant and unconscionable, it is regarded as a penalty, which results in the contractual provision's being void and unenforceable." (Citing Graves v. Cupic, *supra.*)

Accord: Nichols v. Knowles, 87 Idaho 550, 394 P.2d 630 (1969); Melton v. Amar [No. 2], 86 Idaho 262, 385 P.2d 406 (1963). See Thompson v. Fairchild, 93 Idaho 584, 468 P.2d 316 (1970). The district court, using a 7% net profit figure to calculate compensatory damages, concluded that a 75% figure was exorbitant, and constituted an unconscionable penalty.

To determine the reasonableness of the 75% provision, the proper measure of damages must first be announced. For this type of bailment agreement, classifiable under the rubric of partially executed contract, "[i]t may be stated as a general proposition that * * * the purpose or objective of the court is to place the injured party, so far as may be [sic], in the position no better and no worse than he would have occupied had the contract been performed." King v. Beatrice Foods, 89 Idaho 52, 58–59, 402 P.2d 966, 969 (1965). This general statement requires refinement in one regard. As pointed out above, the signs are of negligible value so Young Electric is under no duty to mitigate its damages through a reasonable endeavor to relet the signs. Young Electric's damages are, however, reduced by certain saved expenses which it does not incur since the breach by lessees has relieved it from further performance. In a case where

"[t]he defendant's non-performance * * * saves the plaintiff from the labor or expense of wholly or partly performing on his own part, * * * in order to settle finally the rights of both parties in a single action, the court deducts this saving made by the plaintiff from the value of the performance which the defendant should have made." 11 Williston on Contracts, 3d ed., § 1339 (1968).

The record establishes that the monthly maintenance expense to Young Electric was about $12.00, and that the monthly charge for taxes would be about $2.00. Applying the principle stated by Williston on Contracts, *supra*, to this case, Young Electric's damages would be computed by establishing the total unpaid monthly rentals computed at $75.00 per month less the saved monthly expenses of maintenance and costs of about $14.00 per month. The district court erred in considering the total general overhead expenses,

which are accounted for in a net profit percentage, as saved expenses. As Young Electric persuasively argues, these expenses must, for the most part, be incurred regardless of whether this rental agreement is performed. Since the saved expenses amount to less than 20% of the total monthly rental fee, leaving about 80% as actual lost revenue occasioned by the breach, the 75% liquidated damages provision is eminently reasonable compared to the damages actually sustained.

Further support for enforcing such a liquidated damages clause as here is found in analogous cases from other jurisdictions which have upheld comparable liquidated damages clauses in rental agreements for unique personal property. See, e. g., Young Electric Sign Co. v. Fohrman, 466 P.2d 846 (Nev.1970), enforcing an identical provision to the clause at issue herein; Ray v. Electrical Products Consolidated, *supra*, upholding a 75% clause in sign lease; Mosler v. Woodell, 189 Wash. 583, 66 P.2d 353 (1937), enforcing an 80% clause in sign lease; Bassett v. Claude Neon Federal Co., 65 F.2d 526 (10th Cir. 1933), upholding a 75% clause in a sign rental agreement.

It is our conclusion that the district court erred in its holding that the liquidated damage clause of this agreement was a penalty and unenforceable. Thus, that portion of the judgment awarding damages at 7% of the monthly rentals and fixing attorneys fees must be reversed and the cause remanded to the district court with instructions to enter judgment for Young Electric for 75% of the unpaid monthly payments, together with a reasonable attorneys fee based on the balance due under the new judgment.

Young Electric, by motion in this Court seeks an allowance to it of attorneys fees against the appellants, by reason of the provisions of the agreement. This motion is granted and Young Electric is awarded $750 as attorneys fees on this appeal. The district court shall allow such sum for attorneys fees on appeal in addition to other sums provided in the judgment.

That portion of the judgment awarding damages at 7% of the monthly rentals and fixing attorneys fees is reversed and the cause remanded with instructions to enter judgment for plaintiff, in conformity with the views expressed herein. Costs to cross-appellant.

McQUADE, C. J., DONALDSON and SHEPARD, JJ., and DURTSCHI, District Judge, concur.