532 P.2d 916

**INDUSTRIAL LEASING CORPORATION,**
Plaintiff-Respondent,

v.

**Howard THOMASON** and **Mary Thomason,**
husband and wife, Defendants-
Appellants.

No. 11359.

Supreme Court of Idaho.

Nov. 27, 1974.

Stephen Bistline, Sandpoint, John W. Barrett, Boise, for defendants-appellants.

Robert E. Smylie, Boise, Thomas E. Cooke, Priest River, for plaintiff-respondent.

BAKES, Justice.

This action was brought by the lessor of farm machinery to recover damages for failure of the lessees to make installment payments as provided in the lease. The trial court, sitting without a jury, entered judgment in favor of the lessor. In reaching its decision, the trial court held that the lessor was under no duty to attempt to re-lease or sell the equipment in order to mitigate damages, and thus awarded damages in the amount of the accrued unpaid installments then due plus attorney fees, late payment charges and interest as provided for in the lease. Appeal is taken from the judgment and the conclusion of law that the lessor was under no duty to mitigate damages, and from the measure of damages adopted by the trial court,[1] as well as upon other findings.

Plaintiff-respondent Industrial Leasing, as lessor, entered into a lease of farm machinery with Howard and Mary Thomason, husband and wife, defendant-appellants, on April 15, 1971, later amended on May 31, 1971. The lease term was to run 68 months. The amended lease called for an initial payment of $18,796.15 when signed

1. Conclusion of law No. 13 provided:
"13. The measure of damages for breach of the contract of lease is the value of the counterperformance promised by the de-

fendants, and each of them, to the plaintiffs under the terms of the contract of lease." (Clerk's Tr., p. 92)

and semiannual payments of $19,802.47 beginning on December 10, 1971. The total payments called for under the lease were $216,820.85. Appellant used the equipment in his farming operation during the farming season of 1971. Then, upon the advice of his doctor, he retired from farming for health reasons. After retiring and having no further use for the equipment, he cleaned it and returned it to the dealer from which Industrial Leasing had purchased it.

The equipment was returned to the dealer a few days before December 10, 1971, the date when the first semiannual payment was due. Although Howard Thomason testified that he informed Industrial Leasing prior to December 10, 1971, that he had returned the equipment to the dealer and would not continue the lease with them, Industrial Leasing denied knowledge that the equipment had been returned to the dealer prior to the date of the first payment on December 10, 1971, and the trial court found that the Thomasons "did not notify the plaintiff that they had returned the equipment to Dockins [the dealer] except by refusal to pay the rental therefor which was due on December 10, 1971." The trial court made no finding of when Industrial Leasing first became aware that the equipment had been returned to the dealer. The trial court further made no finding of when Industrial Leasing became aware of the Thomasons' intention to repudiate the lease. However, the plaintiff's president, Mr. Friedman, testified that in the late fall of 1971 Mr. Thomason attempted to terminate the lease but "We told him it couldn't be done." The trial court also found that the dealer to whom the Thomasons had returned the farm equipment was not an agent of Industrial Leasing and thus that the Thomasons had retained possession of it while the equipment was at the dealer's place of business.

The lease provided no measure of damages in the event of default, other than that the lessor might exercise an option provided for in the lease to take possession of the property and either sell or re-lease it to another. In the trial court, respondent Industrial Leasing contended that it was not required to retake possession of the equipment and re-lease or sell it, but, instead as the rental payments provided for in the lease became due it was entitled to sue for them along with interest, late payment charges and attorney fees as its measure of damages. The trial court agreed, rejecting the appellant Thomasons' contention that the lessor was under a duty to mitigate damages by attempting to put the equipment to other productive use. The trial court sustained objections to the Thomasons' questions regarding any efforts by Industrial Leasing to re-lease the equipment. We conclude that the trial court erred in the measure of damages it applied.

This Court has not previously ruled on the precise issue now before us, i. e., whether or not a lessor, in the event of such a breach by the lessee, has a duty to retake possession of the leased property and make a reasonable endeavor to re-lease or sell the property in order to mitigate his damages. This Court did intimate as much in the case of Young Electric Sign Co. v. Capps, 94 Idaho 518, 492 P.2d 57 (1971). That was a case involving a breach of a lease of signs for a motel and lounge. The Court found the signs to be so unique and customized to the particular business that they would be of no use to any other business and thus not re-leasable. While the issue before the Court in that case was the validity of a liquidated damages provision which required the lessee, in the event of default, to pay as damages 75% of the total lease payments reserved in the lease, the Court stated, at page 522, 492 P.2d at page 61:

"To determine the reasonableness of the 75% provision, the proper measure of damages must first be announced. For this type of bailment agreement, classifiable under the rubric of partially executed contract, '[i]t may be stated as a general proposition that * * * the pur-

pose or objective of the court is to place the injured party, so far as may be [sic], in the position no better and no worse than he would have occupied had the contract been performed.' King v. Beatrice Foods, 89 Idaho 52, 58–59, 402 P.2d 966, 969 (1965). This general statement requires refinement in one regard. *As pointed out above, the signs are of negligible value so Young Electric is under no duty to mitigate its damages through a reasonable endeavor to relet the signs.* Young Electric's damages are, however, reduced by certain saved expenses which it does not incur since the breach by lessees has relieved it from further performance." (Emphasis added).

■ Other courts have had occasion to rule on this issue, and some require the lessor to attempt to re-lease the property in order to mitigate the damages,[2] and others do not.[3] However, it is our view that the best rule is that suggested in Young Electric Sign Co. v. Capps, *supra,* i. e., that a lessor should be required to mitigate his damages through a reasonable endeavor to relet the property unless the property is so unique that it could be said as a matter of law that reasonable efforts would not be productive. Such a rule would discourage idleness of productive property and would be in keeping with the other generally accepted damages rules in other commercial law transactions. E. g., in the rental of real property, most jurisdictions place a duty upon a landlord to seek new tenants when the lessees have refused to pay rent as provided in the lease agreement and have vacated the property. Martin v. Siegley, 123 Wash. 683, 212 P. 1057 (1923); Wright v. Baumann, 239 Or. 410, 398 P.2d 119 (1965). As stated by the Oregon Supreme Court in the *Wright* case:

"'* * * [I]t is important that the rules for awarding damages should be such as to discourage even persons against whom wrongs have been committed from passively suffering economic loss which could be averted by reasonable efforts * * *.' McCormick, Damages, p. 127 (1935)." 398 P.2d at 121.

The same principle is applied in the Uniform Commercial Code which, in most instances, after a buyer's breach by refusal to accept and pay for conforming goods, conditions the seller's right to damages upon making an attempt to resell the conforming goods to mitigate damages. I.C. §§ 28–2–706, 28–2–709.

The rule is particularly applicable in this case. If Industrial Leasing were allowed to collect the rentals for the full term of the lease, while the equipment was sitting idle and not in use, it would still retain the farm equipment in a relatively new condition and would then be able to rent it out for substantially another period similar to the lease in question, thereby reaping a windfall to the extent that the property was not physically or economically depreciated during the course of the lease with appellant Thomason. Cf. Northwest Collectors, Inc. v. Enders, 74 Wash.2d 585, 446 P.2d 200, 205 (1968). This would be contrary to the policy stated by this Court in Young Electric Sign Co. v. Capps, *supra* wherein it was stated:

"'[A]s a general proposition . . . the purpose or objective of the court is to place the injured party, . . . in the position no better and no worse than he would have occupied had the contract been performed. King v. Beatrice Foods, 89 Idaho 52, 58–59, 402 P.2d 966, 969 (1965).'" 94 Idaho at 522, 492 P.2d at 61.

---

2. Vincent v. Grayson, 30 Cal.App.3d 899, 106 Cal.Rptr. 733 (1973); Bennett v. Associated Food Stores, Inc., 118 Ga.App. 711, 165 S.E.2d 581 (1968); Locks v. Wade, 36 N.J. Super. 128, 114 A.2d 875 (N.J.App.1955). *See* Demirjian v. Kurtis, 353 Mich. 619, 91 N.W.2d 841 (1958); Groendyke Transport, Inc. v. Merchant, 380 P.2d 682 (Okl.1963).

3. Blakeway v. General Electric Credit Corp., 429 S.W.2d 925 (Tex.Civ.App.1968); Double D Amusement Co. v. Hawkins, 20 Utah 2d 395, 438 P.2d 811 (1968). *See* Electrical Products Corp. v. Mosko, 88 Colo. 447, 297 P. 991 (1931); Weiman v. Butterman, 124 Ill.App.2d 246, 260 N.E.2d 321 (1970).

■ We therefore hold that the lessor of personal property is not unconditionally entitled to the full amount of the rentals reserved in the lease as damages in the event of breach of the lease. If the leased property is of such a kind that the lessor may reasonably anticipate the existence of a market for its re-lease or sale, the lessor is under a duty to use "commercially reasonable"[4] efforts to re-lease or sell the property to mitigate damages according to the following rules:

■ 1. If the lessee notifies the lessor of his intention not to continue the lease, or if the lessor becomes aware of the lessee's intention not to perform the lease by breach or otherwise, and if the leased property is returned to the lessor or made available to the lessor, then the lessor is under a duty to attempt to mitigate the damages sustained by the lessee's breach by re-leasing or selling the property and setting off the amount received against the damages sustained by reason of the lessee's breach of the lease. If a good faith attempt to rent or sell the property proves fruitless, the lessor is entitled to his full rental payment, plus expenses reasonably incurred in attempting to re-lease or sell the property less expenses of performance saved by the breach (e. g., costs of maintenance, insurance, etc.). If the property is re-leased in good faith (i. e., at a rate or price which is commercially reasonable under the circumstances of the case), the lessor's damages are the rental called for in the breached lease, together with the reasonable expenses of preserving the property and re-leasing it, less the amount received in mitigation by the re-lease and any expenses of performance saved by the breach of the lease. *See* Bennett v. Associated Food Stores, Inc., 118 Ga.App. 711, 165. S.E.2d 581 (1968); *see also,* Uniform Commercial Code—Sales, Part 7, Remedies, I.C. §§ 28–2–701 to 28–2–710, for treatment of the analogous problem under the law of sales.

■ 2. Where the lessor sells the property in mitigation of the damages to be sustained by the lessee's breach of the lease, the damages to which the lessor is entitled are the total discounted rents provided for in the lease, together with any salvage value of the equipment reasonably to be anticipated at the end of the original lease term, together with reasonable expenses of sale incurred and interest, less the price received in the sale of the equipment and expenses saved by the breach.

■ The matter is remanded to the trial court to determine

(1) whether or not the property leased to the Thomasons was of such kind that the lessor could reasonably anticipate the existence of a market for its use, other than the lessee;

(2) when the equipment was made available to Industrial Leasing for re-lease or sale by them; and

(3) when Industrial Leasing was aware, or should have been aware that Thomasons intended to breach the lease and would no longer perform the lease. Prior to that time, Industrial Leasing is entitled to the rentals reserved by the lease pro-rated to the date when it became obligated to mitigate its damages. Thereafter, Industrial Leasing's damages shall be computed as herein provided.

■ With regard to the second question above—when the equipment was made available to Industrial Leasing for re-lease or sale—even though the trial court found that by returning the machinery to the dealer that it was not returned to Industrial Leasing because the dealer was not Industrial Leasing's agent, it is our view that the equipment was made available for repossession for re-lease or sale by Industrial Leasing when Industrial Leasing became aware that the equipment had been delivered to the dealer's yard making it available for them to retake. The trial court must determine that date.

---

4. We have borrowed from the terminology of the sales article of the Uniform Commercial Code in formulating these rules of mitigation, e. g., as in the use of such terms as "commercially reasonable."

■ Finally, Industrial Leasing contends that it was only entitled to sue for the rental payments as they accrued and could not accelerate the unaccrued payments, and therefore it should not be required to mitigate its damages. That position is without merit, however, where there has been a repudiation of the portion of the lease left unperformed, as in this case, because the damages that will accrue are computable and the lessor may sue for its entire damage, including unaccrued rental payments to the extent the lessor is entitled to them, under the rules set out herein.

Reversed and remanded for further proceedings regarding damages. Costs to appellant.

SHEPARD, C. J., and DONALDSON, McQUADE and McFADDEN, JJ., concur.